## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VFC SOLUTIONS LTD**<br>Danias 1, Agios Tychonas, 4521,<br>Limassol, Cyprus<br><br><br>*Plaintiff,*<br><br>v.<br><br>**BRADLEY T. SMITH, in his official capacity as**<br>**Director of the United States**<br>**Department of the Treasury,**<br>**Office of Foreign Assets Control**<br>1500 Pennsylvania Avenue, NW<br>Freedman's Bank Building<br>Washington, D.C. 20220<br><br>*Defendant,*<br><br>and<br><br>**THE UNITED STATES DEPARTMENT**<br>**OF THE TREASURY, OFFICE OF FOREIGN**<br>**ASSETS CONTROL**<br>1500 Pennsylvania Avenue, NW<br>Freedman's Bank Building<br>Washington, D.C. 20220<br><br>*Defendant.* | Case No. 1:25-cv-3861<br><br>**COMPLAINT FOR**<br>**DECLARATORY AND**<br>**INJUNCTIVE RELIEF** |

Plaintiff VFC Solutions LTD brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Director, Bradley T. Smith, and in support of its complaint alleges the following:

## INTRODUCTION

1.      Plaintiff is a Cypriot investment and consulting company formerly engaged in promoting innovative technology ventures across Israel and the United States, with investments in early-stage Israeli and American startups specializing in artificial intelligence and emerging technologies. Among its portfolio are companies developing digital health tools for insurance companies and a U.S. startup manufacturing an innovative breathing inhaler designed to help veterans and others suffering from post-traumatic stress disorder.

2.      Plaintiff was designated by Defendant OFAC on February 1, 2023 under Executive Order ("E.O.") 14024 on the basis that it is owned or controlled by, or has acted or purported to act for or on behalf of, directly or indirectly, Alexander Volfovich. *See* Press Release, U.S. Dep't of the Treasury, Treasury Targets Global Sanctions Evasion Network Supporting Russia's Military-Industrial Complex (Feb. 1, 2023).

3.      In response to this designation, and in accordance with OFAC's published guidance allowing blocked persons to seek delisting through remedial measures such as corporate reorganization and resignation of designated persons, Plaintiff proposed to sever its relationship with Alexander Volfovich in exchange for delisting. In evidence the sincerity of Plaintiff's proposal, Mr. Volfovich resigned from his position as Plaintiff's director on September 5, 2024, and attempted to divest his ownership of shares on August 7, 2024. Those divestment efforts, however, were impeded by the Cypriot Registrar of Companies and the Ministry of Finance, which prevented the transaction from being completed—likely due to U.S. sanctions.

4.      Despite Plaintiff's efforts, OFAC denied Plaintiff's delisting petition on September 19, 2025. The denial letter asserted speculative and conclusory assertions to determine that the proposed remedial measures might allow Alexander Volfovich to maintain indirect influence or control over the company through family members, even if Mr. Volfovich's official resignation and attempted divestment were fully effectuated. Such a determination rests on conjectural reasoning, rather than evidence and therefore constitutes an arbitrary and capricious agency action.

5.      Additionally, OFAC's denial improperly attributed to Plaintiff alleged misstatements made by a completely separate legal person in a separate delisting petition. Specifically, OFAC's denial letter explained that the agency has reason to believe that Alexander Volfovich made misstatements in *his own petition*, and as a result, "OFAC cannot rely on the trustworthiness of information being provided by [Alexander] Volfovich in support of any potential VFC remedial measures." However, by imputing another party's conduct to Plaintiff, OFAC not only misapplied its evidentiary standards, but also denied Plaintiff the individualized consideration mandated by its regulations and traditional principles of administrative fairness.

6.      As a result, Plaintiff now seeks judicial review of Defendants' denial pursuant to the Administrative Procedure Act ("APA"), and requests that the Court set aside the denial, remand the matter for reconsideration in accordance with law, and grant other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

7.      This action arises under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

8.      This Court may grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57. This Court may grant injunctive relief in accordance with Fed. R. Civ. P. Rule 65.

9.      Venue is proper in the District of Columbia as this is the district in which a substantial part of the events or omissions giving rise to the claim occurred. *See* 28 U.S.C. §§ 1391(b), (e).

## THE PARTIES

10.      Plaintiff was incorporated on July 19, 2019 and is and was at all times relevant to this complaint an investment company incorporated in Cyprus with registration number HE400224 and its registered address at Danias 1, Agios Tychonas, 4521, Limassol, Cyprus. Plaintiff is currently owned by Alexander Volfovich (40%), Stanislav Volfovich (40%), and Ariel Volfovich (20%). Since September 5, 2024, Plaintiff has been solely directed by Stanislav Volfovich and Ariel Volfovich.

11.      Plaintiff is sanctioned under E.O. 14024, and its name is identified on OFAC's Specially Designated National and Blocked Persons List ("SDN List").

12.      Defendant OFAC is an administrative agency of the United States Department of the Treasury, located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220. Defendant OFAC is responsible for maintaining and administering the SDN List. This includes placing persons on and removing persons from the SDN List consistent with E.O. 14024 and the implementing regulations located at 31 C.F.R. Parts 501 and 587, the "Reporting, Procedures and Penalties Regulations" and the "Russian Harmful Foreign Activities Sanctions Regulations," respectively. Defendant OFAC was responsible for designating Plaintiff pursuant to E.O. 14024 and for denying Plaintiff's petition for removal.

13.     Defendant Bradley T. Smith is the Director of OFAC. In this role, Defendant Bradley T. Smith is responsible for overseeing and directing OFAC's operations, including the adjudication of petitions for removal. Defendant Bradley T. Smith is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A.    Executive Order 14024

14.     On April 15, 2021, President Joseph Biden issued E.O. 14024 pursuant to the authorities granted to him under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. 1701 *et seq*. Exec. Order No. 14024, Blocking Property with Respect to Specified Harmful Foreign Activities of the Government of the Russian Federation, 86 FED. REG. 20,249 (Apr. 15, 2021).

15.     Effective April 15, 2021, E.O. 14024 blocks all property and interests in property that are or come within the United States, or the possession or control of any United States person, of any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, to meet specified designation criteria. *Id*.

16.     Among the designation criteria, E.O. 14024 authorizes sanctions on any person determined to have been owned or controlled by, or acted or purported to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to the Order. *Id*.

### B.    Plaintiff's E.O. 14024 Designation

17.     On February 1, 2023, OFAC designated Plaintiff under section 1(a)(vii) of E.O. 14024 for being owned or controlled by, or for having acted or purported to act for or on behalf of, directly or indirectly, Alexander Volfovich, a person whose property and interests in property were concurrently blocked under E.O. 14024. Notice of OFAC Sanctions Actions, 88 FED. REG.

8,046 (February 7, 2023). OFAC simultaneously designated Alexander Volfovich under section 1(a)(vi)(B) of E.O. 14024 for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Igor Zimenkov, a person who was concurrently designated pursuant to E.O. 14024. Notice of OFAC Sanctions Actions, 88 FED. REG. 8,043 (February 7, 2023). Additionally, OFAC simultaneously designated Alexander Volfovich's adult children, Stanislav Volfovich and Ariel Volfovich, pursuant to E.O. 14024 for being or having been leaders, officials, senior executive officers, or members of the board of directors of VFC Solutions LTD. *Id.*

18.    As a result of its designation, Plaintiff's name is included on OFAC's SDN List. The legal consequence of Plaintiff's designation is that its property and interests in property within U.S. jurisdiction are blocked, and U.S. persons are generally prohibited from engaging in transactions or dealings with it. Moreover, foreign persons who engage in certain transactions or dealings with Plaintiff risk exposure to sanctions themselves under E.O. 14024.

19.    OFAC's press release—which publicly sets forth the factual allegations related to its determination that Plaintiff met the criteria for designation under E.O. 14024—states only that Alexander Volfovich is the public, registered owner of Plaintiff, located in Cyprus. Press Release, U.S. Dep't of the Treasury, Treasury Targets Global Sanctions Evasion Network Supporting Russia's Military-Industrial Complex (Feb. 1, 2023).

**C.    Plaintiff's Requests for Disclosure of the Administrative Record**

20.    On May 1, 2025, Plaintiff submitted a Freedom of Information Act ("FOIA") request to the Department of the Treasury, seeking disclosure of the administrative record underlying Defendants' decision to designate Plaintiff under E.O. 14024, so that Plaintiff could better understand the information OFAC had in its possession and relied upon for Plaintiff's

designation. To date, Plaintiff has not received confirmation of receipt, nor has Plaintiff received the administrative record underlying its designation.

21.     In addition, Plaintiff requested a "Courtesy Document"—i.e., an unclassified version of the list of exhibits contained in the administrative record— from Defendants on May 1, 2025.

22.     On July 28, 2025, Defendants disclosed a heavily redacted Courtesy Document to Plaintiff. The Courtesy Document indicated that the administrative record contained 23 exhibits, yet it identified only three: (i) Executive Order 14024; (ii) an Orbis online business repository profile for VFC Solutions LTD; and (iii) the webpage for the Republic of Cyprus' Department of Registrar of Companies and Intellectual Property, outlining the legal responsibilities of corporate directors and secretaries in Cyprus. Of the remaining exhibits, eighteen were fully redacted as "non-responsive," one was fully redacted with "Top Secret" classification markings, and the remaining exhibit was fully redacted with "Law Enforcement Sensitive" classification markings.

### D.     Plaintiff's Petition for Removal

23.     OFAC administers regulatory procedures by which persons blocked pursuant to its regulations and identified on the SDN List may seek their removal from the SDN List. *See* 31 C.F.R. § 501.807. OFAC's delisting procedures allow interested parties to request reconsideration of their designations, stating that such parties "may submit arguments or evidence that the person believes establishes that an insufficient basis exists for the sanction or that the circumstances resulting in the sanction no longer apply." *Id.* Further, "[t]he sanctioned person also may propose remedial steps on the person's part, *such as corporate reorganization, resignation of persons from positions in a blocked entity, or similar steps*, which the person believes would negate the basis for the sanction." *Id*. (emphasis added).

24.     On February 17, 2024, Plaintiff submitted a petition for removal seeking the rescission of its designation and the removal of its name from the SDN List pursuant to OFAC's delisting procedures set forth at 31 C.F.R. § 501.807. In response, OFAC assigned the matter Case ID RUSSIA-EO14024-37569.

25.     In its petition, Plaintiff explained that it is a Cypriot investment company which has been managed and operated by Stanislav and Ariel Volfovich since their appointment as directors of the company on May 5, 2022, and that Alexander served only as a silent investor who did not participate in meetings, negotiations, or investments. Rather, investment negotiations and decisions had been managed exclusively by Stanislav and Ariel Volfovich.

26.     Recognizing that the basis for its designation rested upon Alexander Volfovich's ownership and control over the company, Plaintiff proposed seventeen remedial measures specifically designed to negate the basis for its designation. Primary among Plaintiff's proposed remedial measures was the offer for Alexander Volfovich to divest his ownership interest in, and resign from, Plaintiff and provide official documentation evidencing the change in relationship to Defendants.

27.     Plaintiff also proposed an extensive package of remedial measures designed to prevent any future sanctionable conduct and ensure ongoing, transparent cooperation with U.S. authorities. These measures comprised binding commitments not to engage in business or enter relationships with blocked persons—excepting Stanislav and Ariel Volfovich—and included robust annual certifications of compliance with all relevant U.S. sanctions, export controls, and anti-money laundering laws. Plaintiff further pledged to implement rigorous corporate screening and internal compliance programs, disclose comprehensive annual and monthly disclosures of its

financial activities and income sources, and submit to regular audits and compliance training for its personnel.

28.     Moreover, Plaintiff proposed furnishing OFAC with thorough documentation regarding its financial relationships and compliance oversight, while adhering to strict reporting and certification timelines.

29.     Notably, Plaintiff's proposal also called for Plaintiff to annually certify that it is not acting for or on behalf of any person on the SDN List nor any entity that is ultimately owned or controlled by a person on the SDN List—with the sole exceptions of its directors, Stanislav and Ariel Volfovich.

30.     On March 1, 2024, OFAC issued a nine-question questionnaire purportedly seeking additional, clarifying, and corroborating information in connection with the information and arguments presented by Plaintiff's petition for removal. Specifically, OFAC requested a detailed description of Plaintiff's business activity; identifying information on all of Plaintiff's owners, managers, and employees; information on any subsidiaries or branches; a comprehensive list of Plaintiff's investments and ownership interests; descriptions and documentation for all of Plaintiff's customers and suppliers; and detailed information about Plaintiff's financial accounts. OFAC also inquired about any work Plaintiff engaged in which was directly or indirectly related to the Government of the Russian Federation, as well as a description of any current or former dealings with any individuals or entities identified on OFAC's SDN List.

31.     Plaintiff responded to OFAC's questionnaire on May 2, 2024, and provided information and documentation responsive to each of Defendants' inquiries. Accordingly, Plaintiff disclosed information on its owners, managers, and employees; as well as provided information on its customers, suppliers, investments, and financial accounts. Notably, Plaintiff stated that it has

not had a relationship or dealings, directly or indirectly, with the Government of the Russian Federation, nor with entities owned or controlled by the Government of the Russian Federation. Plaintiff's response also stated that, aside from its relationship with Alexander, Stanislav, and Ariel Volfovich, Plaintiff has not had any current or past relationships with any SDNs.

32.     Plaintiff supplemented its questionnaire response on October 8, 2024, clarifying and correcting information previously provided on one of its ownership interests and notifying Defendants that Mr. Volfovich was removed as a director of the company on September 5, 2024. Plaintiff's supplemental response further stated that Mr. Volfovich was in the process of divesting his shares in the company, and that Plaintiff would update Defendants as soon as the divestment is completed.

33.     On June 3, 2025, Plaintiff supplemented its petition to further update OFAC on Mr. Volfovich's attempts to divest his ownership interest, consistent with Plaintiff's prior representations to Defendants. Accordingly, Plaintiff informed OFAC that Mr. Volfovich had executed two instruments on August 7, 2024, seeking to transfer half of his shares to his eldest son, Stanislav Volfovich, and half of his shares to his youngest son, Ariel Volfovich, thereby fully severing Mr. Volfovich's ownership interest. Plaintiff further explained that the executed instruments and forms had been submitted to the Cypriot Department of the Registrar of Companies and Intellectual Property ("Registrar"), but that the Registrar was requiring approval from the Cypriot Ministry of Finance.

34.     Notably, Plaintiff had sought the Ministry of Finance's approval for Mr. Volfovich's divestment on December 2, 2024, and was informed by the Registrar on March 7, 2025 that the Ministry of Finance had denied approval for the share transfers—a decision which Plaintiff appealed on March 27, 2025.

35.     On July 18, 2025, Plaintiff again supplemented its petition, this time to provide Defendants with a legal opinion from a Cypriot law firm opining on the reasoning for the Cypriot Registrar and Ministry of Finance's denial. The legal opinion stated that the rejection of the shares transfers was likely the result of the Cypriot authorities' refusal to take administrative actions involving OFAC-designated parties. As a result, the Cypriot authorities are unlikely to approve Alexander Volfovich's divestment while the U.S. sanctions remain in place.

### E.     OFAC's Denial of Plaintiff's Petition for Removal

36.     On September 19, 2025, Defendants denied Plaintiff's petition for removal. In its letter noticing the denial action, OFAC noted that Plaintiff did not challenge the original basis for its designation, but rather requested that OFAC reconsider the designation based on proposed remedial measures. In response, OFAC stated that based on information available to OFAC, "*including the material submitted as part of [Alexander] Volfovich's petition* . . . VFC continues to be owned or controlled by [Alexander] Volfovich and the proposed remedial measures would enable [Alexander] Volfovich to continue exercising control over VFC through his sons." (Emphasis added). Accordingly, "[e]ven if the proposed share transfer were ultimately approved and effectuated, the proposed remedial measures would result in the sale of VFC to [Alexander] Volfovich's sons, and thus [Alexander] Volfovich would *likely* be able to continue to exert control, via proxy, over VFC." (Emphasis added). Defendants do not identify any factual basis for their determination that Mr. Volfovich *might* retain control over Plaintiff by using his sons as proxies. Nor do Defendants explain how Plaintiff's proposal to certify that it is not acting for or on behalf of any persons identified on the SDN List would not address their concern that Mr. Volfovich would control the company indirectly following Plaintiff's delisting.

37.    The denial letter further stated that "[Alexander] Volfovich's ownership stake in VFC continues to exist as a divestment from VFC has not occurred. In particular, OFAC understands that Cypriot authorities did not approve the proposed share transfers of VFC from [Alexander] Volfovich to his sons." Moreover, "[i]n addition to currently being owned or controlled by [Alexander] Volfovich, VFC has also acted or purported to act for or on behalf of, directly or indirectly, [Alexander] Volfovich, and thus VFC continues to meet its original basis for designation."

38.    Lastly, OFAC's letter stated that, based on "assertions in *his* petition," OFAC "has reason to believe that [Alexander] Volfovich has made misstatements regarding his relationship to Igor Zimenkov"—particularly regarding the precise date their relationship was terminated. "As a result, OFAC cannot rely on the trustworthiness of information being provided by [Alexander] Volfovich in support of any potential VFC remedial measures." Notably, Defendants' denial did not explain which information the proposed remedial measures would require Mr. Volfovich—a separate legal person—to provide to effectuate Plaintiff's satisfaction of the remedial measures. Indeed, any legally operative document evidencing Mr. Volfovich's removal and divestment from Plaintiff would necessarily be obtained from the Cypriot Registrar and Ministry of Finance—not from Mr. Volfovich.

39.    Nor does Defendants' denial letter explain how the statements or misstatements from a separate petition filed by a separate petitioner have any bearing on or relevancy to Plaintiff's petition and proposed remedial measures.

**F.    Harm Suffered by Plaintiff**

40.    Defendants' designation of Plaintiff—and Defendants' denial of Plaintiff's petition—has caused substantial harm to Plaintiff both professionally and financially. Specifically,

Plaintiff's accounts with Hyposwiss Private Bank Genève S.A. were frozen on February 2, 2023 as a result of Plaintiff's designation, and Plaintiff has had no ability to access any funds on its account since that date.

41.    In the three years prior to its designation, Plaintiff generated annual revenues between $2.5 to $5 million. Notwithstanding this, Plaintiff's designation has caused Plaintiff to cease all commercial activities, resulting in the total loss of commercial revenues since its designation in February 2023.

42.    Moreover, the companies in which Plaintiff has invested have suffered financially and reputationally as the result of having an investor sanctioned by the United States. Consequentially, many of companies Plaintiff has invested in have repeatedly requested for Plaintiff to divest its current or future ownership interest in them, which would result in a total financial loss for Plaintiff. Therefore, the effects of Defendants' designation and denial actions on Plaintiff's financials and reputation are both tangible and profound.

## LEGAL CLAIMS

## COUNT I

### DEFENDANTS ACTED ARBITRARILY AND CAPRICIOUSLY IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT BY DENYING PLAINTIFF'S PETITION BASED ON SPECULATION AND CONJECTURE

43.    Plaintiff re-alleges and incorporates by reference the submissions contained in all preceding paragraphs as if fully set forth herein.

44.    Under the APA, agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

45.     The APA's reasoned decision-making requirement demands that agency determinations have a rational connection to the record evidence and not rest on mere speculation or hypothetical scenarios.

46.     OFAC's denial letter states that, even if Alexander Volfovich divested from Plaintiff, the proposed remedial measures would enable him to "continue exercising control over [Plaintiff] through his sons," and that Mr. Volfovich "would *likely* be able to continue to exert control, via proxy, over" Plaintiff. (Emphasis added).

47.     Such justification is hypothetical and not grounded in any concrete evidence of Mr. Volfovich's continued, actual control over Plaintiff by controlling his sons' decision-making after his divestment. Mere fears of a possible, future proxy relationship—absent real, documented facts—cannot satisfy the APA's requirement for reasoned decision-making grounded in the administrative record. Moreover, Defendants fail to address Plaintiff's explicit proposal to annually certify, under penalty of perjury, that it is not acting for or on behalf of any person on the SDN List—such as Mr. Volfovich.

48.     By denying Plaintiff's petition on conclusory, speculative, and hypothetical grounds, Defendants have acted arbitrarily and capriciously in violation of the APA.

## COUNT II

**DEFENDANTS ACTED ARBITRARILY AND CAPRICIOUSLY IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT BY DENYING PLAINTIFF'S PETITION BASED ON PURPORTED MISTATEMENTS MADE BY A SEPARATE PETITIONER IN AN ENTIRELY SEPARATE PETITION**

49.     Plaintiff re-alleges and incorporates by reference the submissions contained in all preceding paragraphs as if fully set forth herein.

50.     Agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

51.     A foundational principle of administrative law is that each party before an agency is entitled to individualized consideration based on its own conduct and the specific facts of its case. OFAC's denial letter, however, cites purported misstatements made by Mr. Volfovich—a separate legal person—which were made in his own delisting petition—a separate petition from Plaintiff's—as a basis to deny the remedial measures proposed in Plaintiff's petition.

52.     By denying Plaintiff's petition based on the lack of credibility of a third party's statements relating to circumstances entirely distinct from those regarding his relationship with Plaintiff, and arising in that party's own separate agency proceeding, Defendants failed to identify a rational basis for the agency's decision. Rather, Defendants rely on factors extrinsic to the actual conduct and circumstances of the party before the agency, and instead impute the conduct or statements of a third party relating to circumstances distinct from anything to do with Plaintiff, onto Plaintiff.

53.     By denying Plaintiff's petition based on Mr. Volfovich's purported misstatements in his own separate agency proceeding, Defendants acted arbitrarily and capriciously in violation of the APA.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Issue an order vacating Plaintiff's February 1, 2023 designation pursuant to E.O. 14024;

B.     Issue an order vacating OFAC's September 19, 2025 denial of Plaintiff's petition;

C.      Order Defendants to produce the full unclassified version of the administrative record to Plaintiff;

D.      Order Defendants to produce unclassified summaries of classified or otherwise privileged information contained in the administrative record, which—together with the unclassified version of the administrative record—apprises Plaintiff of the reasons for its designation and the denial of its petition for removal;

E.      Grant an award to Plaintiff of its costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et* seq., and any other applicable provision of law; and

F.      Grant such other and further relief as the Court may deem just and proper.

Dated: November 4, 2025

Respectfully submitted,

*/s/ Erich C. Ferrari*
Erich C. Ferrari, Esq.
Ferrari & Associates
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Counsel for Plaintiff*