**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VFC SOLUTIONS LTD**<br>Danias 1, Agios Tychonas, 4521<br>Limassol, Cyprus<br><br><br>*Plaintiff,*<br><br>v.<br><br>**BRADLEY T. SMITH, in his official capacity as**<br>**Director of the United States**<br>**Department of the Treasury,**<br>**Office of Foreign Assets Control**<br>1500 Pennsylvania Avenue, NW<br>Freedman's Bank Building<br>Washington, D.C. 20220<br><br>*Defendant,*<br><br>and<br><br>**THE UNITED STATES DEPARTMENT**<br>**OF THE TREASURY, OFFICE OF FOREIGN**<br>**ASSETS CONTROL**<br>1500 Pennsylvania Avenue, NW<br>Freedman's Bank Building<br>Washington, D.C. 20220<br><br>*Defendant.* | Case No. 1:25-cv-3861<br><br>**AMENDED COMPLAINT**<br>**FOR DECLARATORY AND**<br>**INJUNCTIVE RELIEF** |

Plaintiff VFC Solutions LTD brings this Amended Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Director, Bradley T. Smith, and in support of its complaint alleges the following:

**INTRODUCTION**

1.      Plaintiff is a Cypriot investment and consulting company formerly engaged in promoting innovative technology ventures across Israel and the United States, with investments in early-stage Israeli and American startups specializing in artificial intelligence and emerging technologies. Among its portfolio are companies developing digital health tools for insurance companies and a U.S. startup manufacturing a novel breathing inhaler designed to help veterans and others suffering from post-traumatic stress disorder.

2.      Plaintiff was designated by Defendant OFAC on February 1, 2023 under Executive Order ("E.O.") 14024 on the basis that it is owned or controlled by, or has acted or purported to act for or on behalf of, directly or indirectly, Alexander Volfovich. *See* Press Release, U.S. Dep't of the Treasury, Treasury Targets Global Sanctions Evasion Network Supporting Russia's Military-Industrial Complex (Feb. 1, 2023).

3.      In response to this designation, and in accordance with OFAC's published guidance allowing blocked persons to seek delisting through remedial measures such as corporate reorganization and resignation of designated persons, Plaintiff proposed to sever its relationship with Alexander Volfovich in exchange for delisting. *See* Admin. R. ("AR") at 210-14. Consistent with Plaintiff's proposal, Alexander Volfovich resigned from his position as Plaintiff's director on September 5, 2024, and attempted to divest his ownership of shares on August 7, 2024. AR at 259, 303, 617. Those divestment efforts, however, were impeded by the Cypriot Registrar of Companies and the Ministry of Finance, which prevented Alexander Volfovich's shares transfers from being completed—likely due to U.S. sanctions. AR at 705-18.

4.      Despite Plaintiff's efforts, OFAC denied Plaintiff's delisting petition on September 19, 2025. AR at 175-76. Defendants' denial decision constitutes final agency action.

5.      Defendant OFAC's denial rested on several grounds. First, that the divestment of Alexander Volfovich's ownership stake in Plaintiff remained because the proposed transfer of shares to his sons had not been approved by Cypriot authorities, preventing his divestment. AR at 175, 182-83. Second, that Defendant OFAC had not been able to confirm from publicly available sources that Alexander Volfovich had ceased serving as a director for Plaintiff. AR at 182-83. Third, that the transfer of shares to Alexander Volfovich's sons could still permit him to exercise control "via proxy" because the sons were both his close family members and themselves blocked persons. AR at 182-84. And finally, that Plaintiff's remedial measures were unacceptable because Defendants could not rely on information supplied by Alexander Volfovich in support of Plaintiff's remedial steps because Defendants believed Alexander Volfovich had made misstatements in his separate petition regarding his relationship with Igor Zimenkov. AR at 176, 182-84.

6.      In doing so, OFAC's denial improperly attributed to Plaintiff alleged misstatements made by a separate legal person in a separate agency proceeding, and treated Plaintiff's proposal as if it was offered by Alexander Volfovich. However, by imputing another party's conduct to Plaintiff, Defendants did not provide individualized consideration to Plaintiff's petition. Defendant OFAC's regulations mandate such individualized consideration, as do traditional principles of administrative fairness. Indeed, Defendants' belief that the remedial measures were proposed by Alexander Volfovich—and not by Plaintiff—is not supported by the administrative record.

7.      Moreover, the administrative record that Defendants disclosed following the initiation of this litigation reveals that the purported "misrepresentation" made in Alexander Volfovich's petition was voluntarily clarified by Alexander Volfovich in a subsequent submission in his administrative reconsideration process. AR at 182-83. Defendants did not analyze whether the initial statement reflected intentional falsehood, recklessness, or mere imprecision

3

subsequently corrected in good faith. Moreover, Defendants failed to analyze the materiality of the discrepancy—i.e., Alexander Volfovich's imprecise claim that his relationship with Igor Zimenkov had ended in April 2021, before voluntarily clarifying that it continued until December 2021. *Id*. The administrative record fails to assess the relevancy of Alexander Volfovich's historical relationships to remedial measures proposed by Plaintiff which exclusively concerned Plaintiff's *future* conduct.

8. Defendants then applied the purported "misrepresentation" to reject Plaintiff's remedial measures, stating that it "could not reasonably rely on any such representation." Defendants did not explain which specific representations in Plaintiff's proposal depended on Alexander Volfovich's credibility. AR at 184. Nor is there evidence in the administrative record that Defendants assessed which of Plaintiff's proposed remedial measures would depend on representations or documentation provided by Alexander Volfovich, as opposed to Plaintiff's independent certifications and conduct. AR at 210-14. Notably, the administrative record does not contain any evidence that Plaintiff's proposed remedial measures require involvement or participation from Alexander Volfovich.

9. Further, Defendants' rely on a third-party commercial database over self-effectuating, legally operative primary documentation. Specifically, Defendants stated that they are "unable to confirm Volfovich's representation that he has resigned from VFC," because "[[t]he information in Orbis does not corroborate Petitioner's assertion that on September 5, 2024, Volfovich was removed as an officer and director of VFC." AR at 182-83.

10. Orbis is a subscription-based commercial database aggregating various public registries. Orbis itself acknowledges and cautions that the information on its database is not always accurate or up to date. Indeed, Orbis' website clearly states, in all capitals, that "NEITHER ORBIS

NOR ANYONE ASSOCIATED WITH ORBIS REPRESENTS OR WARRANTS THAT THE WEBSITE, ITS CONTENT OR ANY SERVICES OR ITEMS OBTAINED THROUGH THE WEBSITE WILL BE ACCURATE, RELIABLE, ERROR-FREE OR UNINTERRUPTED, [OR] THAT DEFECTS WILL BE CORRECTED." Website terms & conditions, Orbis, https://www.orbis.org/en/website-terms-conditions (last visited Apr. 22, 2026).

11.     The records Plaintiff submitted to OFAC, however, included a certified statement evidencing Alexander Volfovich's removal as director, and bearing the stamp of Cyprus' Department of Registrar of Companies and Intellectual Property. AR at 303. Defendants' evidentiary memorandum does not address Orbis' limitations, identify any reason to believe the submitted documentation is not authentic, nor explain why Orbis should be credited over self-actuating corporate documentation certified by the Cypriot Registrar.

12.     As a result, Plaintiff now seeks judicial review of Defendants' denial pursuant to the Administrative Procedure Act ("APA"), and requests that the Court set aside the denial, remand the matter for reconsideration in accordance with law, and grant other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

13.     This action arises under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

14.     This action seeks review of final agency action under 5 U.S.C. §§ 702 and 704. Plaintiff seeks relief under 5 U.S.C. § 706 because Defendants' denial was arbitrary, capricious, and otherwise not in accordance with law, and because there is no other adequate remedy in court.

15.     This Court may grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57. This Court may grant injunctive relief in accordance with Fed. R. Civ. P. Rule 65.

16.     Venue is proper in the District of Columbia as Defendants reside in this district, and because this is the district in which a substantial part of the events or omissions giving rise to the claim occurred. *See* 28 U.S.C. §§ 1391(b), (e).

17.     This Court has jurisdiction to award attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2), and the Court's inherent powers.

## THE PARTIES

18.     Plaintiff was incorporated on July 19, 2019 and is and was at all times relevant to this complaint an investment company incorporated in Cyprus with registration number HE400224 and its registered address at Danias 1, Agios Tychonas, 4521, Limassol, Cyprus. Plaintiff is currently owned by Alexander Volfovich (40%), Stanislav Volfovich (40%), and Ariel Volfovich (20%). Since September 5, 2024, Plaintiff has been solely directed by Stanislav Volfovich and Ariel Volfovich, following Alexander Volfovich's resignation.

19.     Plaintiff is sanctioned under E.O. 14024, and its name is identified on OFAC's Specially Designated National and Blocked Persons List ("SDN List").

20.     Defendant OFAC is an administrative agency of the United States Department of the Treasury, located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220. Defendant OFAC is responsible for maintaining and administering the SDN List. This includes placing persons on and removing persons from the SDN List consistent with E.O. 14024 and the implementing regulations located at 31 C.F.R. Parts 501 and 587, the "Reporting, Procedures and Penalties Regulations" and the "Russian Harmful Foreign Activities Sanctions

6

Regulations," respectively. Defendant OFAC was responsible for designating Plaintiff pursuant to E.O. 14024 and for denying Plaintiff's petition for removal.

21. Defendant Bradley T. Smith is the Director of OFAC. In this role, Defendant Bradley T. Smith is responsible for overseeing and directing OFAC's operations, including the adjudication of petitions for removal. Defendant Bradley T. Smith is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A. Executive Order 14024

22. On April 15, 2021, President Joseph Biden issued E.O. 14024 pursuant to the authorities granted to him under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. 1701 *et seq*. Exec. Order No. 14024, Blocking Property with Respect to Specified Harmful Foreign Activities of the Government of the Russian Federation, 86 FED. REG. 20,249 (Apr. 15, 2021).

23. Effective April 15, 2021, E.O. 14024 blocks all property and interests in property that are or come within the United States, or the possession or control of any United States person, of any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, to meet specified designation criteria. *Id*.

24. Among the designation criteria, E.O. 14024 authorizes sanctions on any person determined to have been owned or controlled by, or have acted or purported to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to the Order. *Id*. § 1(a)(vii).

### B. Plaintiff's E.O. 14024 Designation

25. On February 1, 2023, OFAC designated Plaintiff under section 1(a)(vii) of E.O. 14024 for being owned or controlled by, or for having acted or purported to act for or on behalf

of, directly or indirectly, Alexander Volfovich, a person whose property and interests in property were concurrently blocked under E.O. 14024. Notice of OFAC Sanctions Actions, 88 FED. REG. 8,046 (February 7, 2023). OFAC simultaneously designated Alexander Volfovich under section 1(a)(vi)(B) of E.O. 14024 for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Igor Zimenkov, a person who was concurrently designated pursuant to E.O. 14024. Notice of OFAC Sanctions Actions, 88 FED. REG. 8,043 (February 7, 2023). Additionally, OFAC simultaneously designated Alexander Volfovich's adult children, Stanislav Volfovich and Ariel Volfovich, pursuant to E.O. 14024 for being or having been leaders, officials, senior executive officers, or members of the board of directors of Plaintiff. *Id*.

26.     As a result of its designation, Plaintiff's name is included on OFAC's SDN List. The legal consequence of Plaintiff's designation is that its property and interests in property within U.S. jurisdiction are blocked, and U.S. persons are generally prohibited from engaging in transactions or dealings with it. Moreover, foreign persons who engage in certain transactions or dealings with Plaintiff risk exposure to sanctions themselves under E.O. 14024.

27.     OFAC's press release—which publicly sets forth the factual allegations related to its determination that Plaintiff met the criteria for designation under E.O. 14024—states only that Alexander Volfovich is the public, registered owner of Plaintiff, located in Cyprus. Press Release, U.S. Dep't of the Treasury, Treasury Targets Global Sanctions Evasion Network Supporting Russia's Military-Industrial Complex (Feb. 1, 2023).

C.    **Plaintiff's Petition for Removal**

28.     OFAC administers regulatory procedures by which persons blocked pursuant to its regulations may seek their removal from the SDN List. *See* 31 C.F.R. § 501.807. OFAC's delisting

procedures allow interested parties to request reconsideration of their designations, stating that such parties "may submit arguments or evidence that the person believes establishes that an insufficient basis exists for the sanction or that the circumstances resulting in the sanction no longer apply." *Id.* Further, "[t]he sanctioned person also may propose remedial steps on the person's part, *such as corporate reorganization, resignation of persons from positions in a blocked entity, or similar steps*, which the person believes would negate the basis for the sanction." *Id*. (emphasis added).

29.     On February 17, 2024, Plaintiff submitted a petition for removal seeking the rescission of its designation and the removal of its name from the SDN List pursuant to OFAC's delisting procedures set forth at 31 C.F.R. § 501.807. AR at 205-33. In response, OFAC assigned the matter Case ID RUSSIA-EO14024-37569.

30.     In its petition, Plaintiff explained that it sought reconsideration based on remedial measures designed to negate the basis for its sanctions designation. AR at 210-12. The petition explained that Plaintiff's request for reconsideration was made consistent with Defendant OFAC's procedures set forth at 31 C.F.R. § 501.807. *Id*. Plaintiff represented that Alexander Volfovich would divest his ownership interest in, and resign from, Plaintiff, and that upon acceptance of those remedial measures Plaintiff would no longer be "owned or controlled by" Alexander Volfovich. AR at 213.

31.     Although Plaintiff's ownership structure continued to reflect Alexander Volfovich's share interest due to Cypriot authorities' refusal to approve the attempted transfer, Plaintiff's petition sought delisting based on numerous remedial measures designed to negate the basis for sanctions. AR at 210-12. These proposed remedial measures included resignation,

9

divestment efforts, and compliance commitments—commitments which are identical to those remedial steps expressly identified by 31 C.F.R. § 501.807 as r. AR at 210-12.

32. Plaintiff also proposed an extensive package of remedial measures designed to prevent any future sanctionable conduct and ensure ongoing, transparent cooperation with U.S. authorities. These measures comprised binding commitments not to engage in business or enter relationships with blocked persons—excepting Stanislav and Ariel Volfovich—and included robust annual certifications of compliance with all relevant U.S. sanctions, export controls, and anti-money laundering laws. *Id*. Plaintiff further pledged to implement rigorous corporate screening and internal compliance programs, disclose comprehensive annual and monthly disclosures of its financial activities and income sources, and submit to regular audits and compliance training for its personnel. *Id*. Moreover, Plaintiff proposed furnishing OFAC with thorough documentation regarding its financial relationships and compliance oversight, while adhering to strict reporting and certification timelines. *Id*.

33. Notably, Plaintiff's proposal also called for Plaintiff to annually certify that it is not acting for or on behalf of any person on the SDN List nor any entity that is ultimately owned or controlled by a person on the SDN List—with the sole exceptions of its directors, Stanislav and Ariel Volfovich. AR at 210.

34. Plaintiff's petition tracked what OFAC's regulatory framework for delisting invites a sanctioned person to do: it proposed remedial steps—including resignation, divestment, corporate governance changes, compliance certifications, screening, reporting, and audits—intended to negate the basis for sanctions and prevent future sanctionable conduct. *See* 31 C.F.R. § 501.807.

35.     On March 1, 2024, OFAC issued a nine-question questionnaire purportedly seeking additional, clarifying, and corroborating information in connection with the information and arguments presented by Plaintiff's petition for removal. AR at 234-36. Specifically, OFAC requested a detailed description of Plaintiff's business activity; identifying information on all of Plaintiff's owners, managers, and employees; information on any subsidiaries or branches; a comprehensive list of Plaintiff's investments and ownership interests; descriptions and documentation for all of Plaintiff's customers and suppliers; and detailed information about Plaintiff's financial accounts. *Id*. OFAC also inquired about any work Plaintiff engaged in which was directly or indirectly related to the Government of the Russian Federation, as well as a description of any current or former dealings with any individuals or entities identified on OFAC's SDN List. AR at 235.

36.     Plaintiff responded to OFAC's questionnaire on May 2, 2024, and provided information and documentation responsive to each of Defendants' inquiries. AR at 238-57. In doing so, Plaintiff disclosed information on its owners, managers, and employees; as well as provided information on its customers, suppliers, investments, and financial accounts. AR at 239-46. Plaintiff confirmed that it has not had a relationship or dealings, directly or indirectly, with the Government of the Russian Federation, nor with entities owned or controlled by the Government of the Russian Federation, and that, aside from its relationship with Alexander, Stanislav, and Ariel Volfovich, Plaintiff has not had any current or past relationships with any Specially Designated Nationals ("SDNs"). AR at 247-48.

37.     Plaintiff supplemented its questionnaire response on October 8, 2024, advising Defendants that Alexander Volfovich was removed as a director of the company on September 5, 2024, and that he was in the process of divesting his shares. AR at 258-303.

38.     On June 3, 2025, Plaintiff supplemented its petition to further update OFAC on Alexander Volfovich's attempts to divest his ownership interest, consistent with Plaintiff's prior representations to Defendants. AR at 616-32. Plaintiff informed OFAC that Alexander Volfovich had executed two instruments on August 7, 2024, seeking to transfer half of his shares to his eldest son, Stanislav Volfovich, and half of his shares to his youngest son, Ariel Volfovich, thereby fully severing Alexander Volfovich's ownership interest. AR at 617. Plaintiff further explained that the executed instruments and forms had been submitted to the Cypriot Department of the Registrar of Companies and Intellectual Property ("Registrar"), but that the Registrar was requiring approval from the Cypriot Ministry of Finance. *Id*.

39.     Notably, Plaintiff had sought the Ministry of Finance's approval for Alexander Volfovich's divestment on December 2, 2024, and was informed by the Registrar on March 7, 2025 that the Ministry of Finance had denied approval for the share transfers—a decision which Plaintiff appealed on March 27, 2025. *Id*.

40.     On July 18, 2025, Plaintiff supplemented its petition with a legal opinion from Cypriot counsel explaining that the Cypriot authorities' refusal to process the divestment was the result of their reluctance to engage in actions involving persons on the SDN List, and that the transfer could likely be completed within approximately two weeks if the relevant parties were removed from the SDN List. AR at 705-18.

**D.     OFAC's Denial of Plaintiff's Petition for Removal & Disclosure of the Record**

41.     On September 19, 2025, Defendants denied Plaintiff's petition for removal. AR at 175-76. Following the initiation of this litigation, on March 25, 2026, Defendants disclosed to Plaintiff the unclassified versions of the administrative records underlying Plaintiff's original

designation ("Designation Record"), AR at 1-174, as well as its September 19, 2025 denial ("Denial Record"). AR at 175-718.

42.    The Designation Record includes a designation and blocking memorandum dated February 1, 2023, determining that Plaintiff, together with ten individuals and eleven entities, meets one or more criteria for designation under E.O. 14024. AR at 1-4. In addition, the Designation Record includes an evidentiary memorandum identifying the evidence in support of Defendants' conclusion that Plaintiff is owned or controlled by, or has acted or purported to act for or on behalf of, directly or indirectly, Alexander Volfovich. AR at 5-14. Notably, nearly all of the information in the evidentiary memorandum is redacted for being "Non-Responsive,"—i.e., unrelated to Plaintiff's designation. *Id*. Aside from the "Non-Responsive" markings, the evidentiary memorandum also includes a paragraph and footnote redacted for being "Top Secret," as well as two paragraphs redacted for being "Law Enforcement Sensitive." AR at 8, 10. Lastly, the Designation Record includes an exhibit list, with twenty-three exhibits, all but three of which are fully redacted for either being non-responsive (eighteen exhibits), top secret (one exhibit), or law enforcement sensitive (one exhibit). AR at 13-14. The disclosed exhibits are limited to E.O. 14024, the Orbis profile page for VFC Solutions LTD, and a webpage for the Republic of Cyprus Department of the Registrar of Companies and Intellectual Property. *Id*.

43.    The Denial Record consists of Defendants' September 19, 2025 denial letter, an evidentiary memorandum, and an exhibits list with twenty exhibits, three of which are redacted due to "Top Secret" and "Law Enforcement Sensitive" markings. AR at 175-718. Notably, exhibits ten, eleven, and fifteen are submissions that Alexander Volfovich made in *his* administrative reconsideration process, including *his* petition, *his* July 29, 2024 questionnaire response, and *his* February 9, 2025 questionnaire response. AR at 308-615, 640-65.

44.    OFAC's denial letter stated that Plaintiff had sought reconsideration based on proposed remedial measures, including Alexander Volfovich's resignation as an officer and director and his full divestment as a shareholder. AR at 175. In response, OFAC concluded that based on information available, "*including the material submitted as part of [Alexander] Volfovich's petition . . .* VFC continues to be owned or controlled by [Alexander] Volfovich and the proposed remedial measures would enable [Alexander] Volfovich to continue exercising control over VFC through his sons." *Id*. (Emphasis added).

45.    According to OFAC, "[e]ven if the proposed share transfer were ultimately approved and effectuated, the proposed remedial measures would result in the sale of VFC to [Alexander] Volfovich's sons, and thus [Alexander] Volfovich would *likely* be able to continue to exert control, via proxy, over VFC." *Id*. (Emphasis added). Defendants do not identify any factual basis for their determination that Alexander Volfovich *might* retain control over Plaintiff by using his sons as proxies.

46.    Rather, Defendants emphasized that the proposed transferees were Alexander Volfovich's sons, both of whom were themselves blocked persons under E.O. 14024 based on their involvement with Plaintiff, and stated that their familial relationship gave OFAC substantial concern that Alexander Volfovich could continue to maintain control over Plaintiff by using them as proxies. AR at 184.

47.    But neither the denial letter nor the evidentiary memorandum explains why that concern renders Plaintiff's complete remedial package inadequate, why the proposed certifications and compliance controls did not mitigate that concern, or whether any alternative ownership or governance arrangement would suffice under § 501.807.

14

48.     Nor do Defendants explain how Plaintiff's proposal to certify that it is not acting for or on behalf of any persons identified on the SDN List—with the exceptions of its owners and directors Stanislav and Ariel Volfovich—would not address their concern that Alexander Volfovich would control the company via proxy. Instead, Defendants take issue that "Volfovich is seeking to divest from VFC by transferring ownership to his sons, Stanislav Volfovich and Ariel Volfovich, as opposed to an un-related third party." AR at 184.

49.     Defendants further relied on the fact that divestment had not been completed and that a publicly available subscription database had not confirmed Alexander Volfovich's resignation/removal as a director. AR at 182-83. Specifically, Defendant OFAC stated that it understood Cypriot authorities had not approved the transfer of shares to his sons, that his ownership stake therefore continued to exist, and that Orbis still reflected him as a director and 40 percent owner—stating that "[t]he information in Orbis does not corroborate Petitioner's assertion that on September 5, 2024, Volfovich was removed as an officer and director of VFC." *Id*.

50.     Defendants did not explain why the absence of public-database confirmation outweighed Plaintiff's submitted materials, nor did it identify whether public-source updating was a necessary condition for removal under § 501.807. Indeed, neither the denial letter nor the evidentiary memorandum demonstrates that OFAC sought clarification on Alexander Volfovich's resignation, whether public-database confirmation was required for purposes of § 501.807, or why the self-actuating, certified materials Plaintiff submitted were insufficient to establish the change in management pending a third-party database updating.

51.     The administrative record also reflects that OFAC was expressly informed and understood that Cypriot authorities' refusal to process the divestment stemmed from the parties' SDN status, and that the transfer could likely be completed within two weeks if the relevant parties

were removed from the SDN List. AR at 705-18, 180, 183. OFAC's denial did not explain how Plaintiff could satisfy the agency's expectation of finalized divestment where the designation itself was identified in the record as the practical barrier to completion.

52.    Lastly, Defendants stated that, based on "assertions in *his* petition," OFAC "has reason to believe that [Alexander] Volfovich has made misstatements regarding his relationship to Igor Zimenkov"—particularly regarding the precise date their relationship was terminated. AR at 176. "As a result, OFAC cannot rely on the trustworthiness of information being provided by [Alexander] Volfovich in support of any potential VFC remedial measures." *Id*.

53.    The administrative record, however, states only in general terms that Alexander Volfovich's future actions and representations would be central to remedial steps. AR at 184. It does not identify which portions of Plaintiff's remedial showing depended on his personal credibility rather than on executed instruments, Cyprus-related filings, counsel submissions, or Plaintiff's own proposed certifications and compliance undertakings.

54.    Thus, Defendants' denial did not explain which information the proposed remedial measures would require Alexander Volfovich—a separate legal person—to provide to effectuate Plaintiff's satisfaction of the remedial measures. Indeed, any legally operative document evidencing Alexander Volfovich's removal and divestment from Plaintiff would necessarily be obtained from the Cypriot Registrar and Ministry of Finance—not from Alexander Volfovich.

55.    Nor does Defendants' denial letter explain how the statements or misstatements from a separate petition filed by a separate petitioner have any bearing on or relevancy to Plaintiff's petition and proposed remedial measures.

56.    Defendants also fail to explain how Alexander Volfovich's purported misstatements about his relationship with Igor Zimenkov negatively impact his credibility, when

Alexander Volfovich subsequently clarified and rectified his prior misstatement with accurate information, supported by financial records prepared by a third-party accountant. AR at 415-16, 518-19. Notably, Defendants stated that "Volfovich made a misrepresentation to OFAC when claiming he 'severed his relationship with Igor Zimenkov in April 2021,' and subsequently clarified his last transactions with Zimenkov occurred in December 2021." AR at 183.

57.    The denial letter and evidentiary memorandum did not identify what remedial structure, if any, would permit Plaintiff to negate the basis for designation. Defendant OFAC rejected Plaintiff's petition because Alexander Volfovich's divestment could not be completed; stated that even if his divestment was completed it would remain unacceptable, and recorded evidence that formal completion was being blocked while the relevant parties remained on the SDN List. AR at 183-84. Yet OFAC did not explain whether any alternative transfer, governance, compliance, escrow, trustee, certification, or other arrangement could satisfy § 501.807.

58.    Finally, OFAC's denial did not explain why Plaintiff's proposed governance, certification, screening, reporting, audits, and compliance measures would not address the agency's stated concerns.

### E.    Harm Suffered by Plaintiff

59.    Defendants' designation of Plaintiff—and Defendants' denial of Plaintiff's petition—has caused substantial harm to Plaintiff both professionally and financially. Specifically, Plaintiff's accounts with Hyposwiss Private Bank Genève S.A. were frozen on February 2, 2023 as a result of Plaintiff's designation, and Plaintiff has had no ability to access any funds on its account since that date.

60.    In the three years prior to its designation, Plaintiff generated annual revenues between $2.5 to $5 million. Notwithstanding this, Plaintiff's designation has caused Plaintiff to

17

cease all commercial activities, resulting in the total loss of commercial revenues since its designation in February 2023.

61.     Moreover, the companies in which Plaintiff has invested have suffered financially and reputationally as the result of having an investor sanctioned by the United States. Consequentially, many of the companies Plaintiff has invested in have repeatedly requested for Plaintiff to divest its current or future ownership interest in them, which would result in a total financial loss for Plaintiff. The effects of Defendants' designation and denial actions on Plaintiff's financials and reputation are therefore both tangible and profound.

## LEGAL CLAIMS

### COUNT I

**DEFENDANTS ACTED ARBITRARILY AND CAPRICIOUSLY IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT BY DENYING PLAINTIFF'S PETITION BASED ON SPECULATION AND CONJECTURE THAT IS BOTH UNSUPPORTED BY THE RECORD AND IRRATIONAL**

62.     Plaintiff re-alleges and incorporates by reference the submissions contained in all preceding paragraphs as if fully set forth herein.

63.     Under the APA, agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

64.     The APA's reasoned decision-making requirement demands that agency determinations have a rational connection to the record evidence and not rest on mere speculation or hypothetical scenarios.

65.     OFAC's denial letter states that, even if Alexander Volfovich divested from Plaintiff, the proposed remedial measures would enable him to "continue exercising control over

18

[Plaintiff] through his sons," and that Alexander Volfovich "would *likely* be able to continue to exert control, via proxy, over" Plaintiff. AR at 175 (Emphasis added).

66.   Such justification is hypothetical and not grounded in any concrete evidence of Alexander Volfovich's continued, actual control over Plaintiff by controlling his sons' decision-making after his divestment. Mere fears of a possible, future proxy relationship—absent real, documented facts—cannot satisfy the APA's requirement for reasoned decision-making grounded in the administrative record. Moreover, Defendants fail to address Plaintiff's explicit proposal to annually certify, under penalty of perjury, that it is not acting for or on behalf of any person on the SDN List—such as Alexander Volfovich.

67.   Moreover, Defendants' concern that Alexander Volfovich could exercise control through his sons ignores the fact that Stanislav Volfovich (40%) and Ariel Volfovich (20%) already hold a combined 60 percent majority interest in Plaintiff—even without Alexander Volfovich's 40 percent stake. AR at 206. If OFAC's concern is that Alexander Volfovich could influence his sons' decision-making, that concern exists regardless of whether Alexander Volfovich divests his minority stake. Defendants do not explain how the identity of the transferee of Alexander Volfovich's minority interest changes the proxy-control calculus when his sons already hold controlling majority ownership, and are currently Plaintiff's sole directors and decisionmakers.

68.   Furthermore, aside from having no impact on his sons' control over Plaintiff, Defendants' insistence that Alexander Volfovich divest to an "unaffiliated third-party" rather than to his sons is commercially unrealistic and detached from economic reality. AR at 182. Indeed, even if Alexander Volfovich were to abandon or renounce his shares, the practical result would be identical—Stanislav and Ariel would hold 100 percent of the company, the same outcome as the

19

proposed transfer. Defendants fail to address this reality, rendering their decision making arbitrary and capricious.

69.     By denying Plaintiff's petition on conclusory, speculative, hypothetical, and irrational grounds, without seriously considering or rebutting Plaintiff's proposals, Defendants have acted arbitrarily and capriciously in violation of the APA.

## COUNT II

**DEFENDANTS ACTED ARBITRARILY AND CAPRICIOUSLY IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT BY DENYING PLAINTIFF'S PETITION BASED ON PURPORTED MISTATEMENTS MADE BY A SEPARATE PETITIONER IN AN ENTIRELY SEPARATE PETITION AND THEREBY FAILING TO PROVIDE PLAINTIFF'S PETITION WITH INDIVIDUALIZED CONSIDERATION**

70.     Plaintiff re-alleges and incorporates by reference the submissions contained in all preceding paragraphs as if fully set forth herein.

71.     Agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

72.     A foundational principle of administrative law is that each party before an agency is entitled to individualized consideration based on its own conduct and the specific facts of its case. OFAC's denial letter, however, cites purported misstatements made by Alexander Volfovich—a separate legal person—which were made in his own delisting petition—a separate petition from Plaintiff's—as a basis to deny the remedial measures proposed in Plaintiff's petition. AR at 175.

73.     By denying Plaintiff's petition based on the lack of credibility of a third party's statements relating to circumstances entirely distinct from those regarding his relationship with Plaintiff, and arising in that party's own separate agency proceeding, Defendants failed to identify

a rational basis for the agency's decision. Rather, Defendants rely on factors extrinsic to the actual conduct and circumstances of the party before the agency, and instead impute the conduct or statements of a third party relating to circumstances distinct from anything to do with Plaintiff, onto Plaintiff.

74.    Indeed, Defendants' evidentiary memorandum repeatedly treats Alexander Volfovich—not Plaintiff—as the party proposing remedial measures, stating: "In *his* February 17, 2024 request for reconsideration," and that "OFAC cannot trust *Volfovich's proposed remedial measures* that would purportedly negate the basis for designation because Volfovich has made representations to OFAC." AR at 179, 181 (emphasis added). The evidentiary memorandum further states: "In VFC's petition for reconsideration on February 17, 2024, *Volfovich has proposed remedial steps* related to VFC." AR at 183 (emphasis added).

75.    These attributions are factually incorrect. Each remedial measure—accepting a resignation, certifying non-dealing with SDNs, implementing compliance programs—is an action only Plaintiff, as a corporate entity, could undertake. Plaintiff's petition clearly stated "VFC proposes the following." AR at 210-14.

76.    Notwithstanding this, OFAC's denial letter cites purported misstatements made by Alexander Volfovich in his own petition as a basis to deny the remedial measures proposed in Plaintiff's petition, stating: "OFAC cannot rely on the trustworthiness of information being provided by [Alexander] Volfovich in support of any potential VFC remedial measures." AR at 176. The evidentiary memorandum states only that "Volfovich's actions and representations would be central to any remedial steps related to VFC's petition." AR at 181, 184.

77.    Defendants, however, do not identify what information Volfovich would need to provide that could not be verified independently. The proposed remedial measures do not call on

Volfovich to provide certifications or documents to OFAC. Rather, (i) Plaintiff certifies its own compliance; (ii) Volfovich's resignation is documented by Cypriot corporate filings and accepted by Plaintiff; and (iii) divestment is documented through the Cypriot Registrar. None of these depend on trusting Alexander Volfovich's word.

78. By denying Plaintiff's petition based on the lack of credibility of a third party's statements relating to circumstances entirely distinct from those regarding his relationship with Plaintiff, arising in that party's own separate agency proceeding, and without identifying which specific aspects of Plaintiff's proposed remedial measures depend on Alexander Volfovich's representations, Defendants failed to provide Plaintiff with the individualized consideration mandated by their regulations. Accordingly, Defendants acted arbitrarily and capriciously in violation of the APA.

### COUNT III

DEFENDANTS ACTED ARBITRARILY AND CAPRICIOUSLY IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT BY FAILING TO CREDIT ALEXANDER VOLFOVICH'S VOLUNTARY CLARIFICATION CORRECTING HIS PURPORTED MISSTATEMENT AND BY USING THE NEGATIVE CREDIBILITY DETERMINATION TO DENY PLAINTIFF'S PETITION

79. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

80. Under the APA, agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A). An agency acts arbitrarily and capriciously when it "entirely fail[s] to consider an important aspect of the problem," *Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Reasoned agency decision-making requires that the agency consider the full evidentiary record—including

evidence that cuts against its initial assessment—before assigning dispositive weight to any adverse inference. *See Epsilon Elecs., Inc. v. U.S. Dep't of the Treasury*, 857 F.3d 913 (D.C. Cir. 2017).

81.    Defendants' stated basis for discounting Alexander Volfovich's credibility—and by extension, the entirety of Plaintiff's proposed remedial steps—was a purported misstatement made by Alexander Volfovich in his own, separate delisting petition regarding the precise end date of his commercial and professional relationship with Igor Zimenkov. Specifically, Defendants stated that "Volfovich made a misrepresentation to OFAC when claiming he 'severed his relationship with Igor Zimenkov in April 2021,' and subsequently clarified his last transactions with Zimenkov occurred in December 2021." AR at 183.

82.    Indeed, the administrative record discloses that Alexander Volfovich voluntarily corrected this statement in a subsequent submission in his own administrative reconsideration proceeding. AR at 182-83, 415-16, 518-19. Specifically, relying on the information produced in a third-party audit, Alexander Volfovich explained, in his July 29, 2024 questionnaire response, that "the Petition mistakenly stated that Igor Zimenkov was paid approximately $500,000 USD during the First Quarter of 2021, he was actually paid a total of $715,600 USD in 2021, with the final payment of $105,500 USD made on December 6, 2021. . . . Accordingly, the last Zimenkov-related transaction occurred in December 2021, not April 2021." AR at 415-16.

83.    Therefore, far from concealing or maintaining an inaccurate representation, Alexander Volfovich proactively clarified the date discrepancy and supported the correction with financial records prepared by a third-party accountant. AR at 415-16, 518-19. Defendants recognized this voluntary clarification—they referenced it in the evidentiary memorandum—but assigned it no weight and offered no explanation for why a voluntarily corrected imprecision,

23

backed by third-party financial documentation, constitutes a disqualifying "misstatement" warranting the categorical rejection of Plaintiff's entire remedial package.

84.    In treating the voluntarily corrected statement as a dispositive negative credibility finding, Defendants failed to conduct the analysis that reasoned decision-making requires. Specifically, Defendants failed to assess whether the initial statement reflected intentional falsehood, a faulty memory, recklessness, or mere imprecision. Defendants also failed to assess whether the voluntary correction, supported by independent third-party financial records, negated or mitigated any adverse inference. In addition, Defendants did not address the materiality of the date discrepancy—that is, whether the eight-month difference between April 2021 and December 2021 bears any relationship to the remedial measures Plaintiff proposed, which concern Plaintiff's future conduct and governance, not Alexander Volfovich's historical business relationships. Finally, Defendants do not assess which specific components of Plaintiff's proposed remedial package, if any, turned on Alexander Volfovich's personal credibility rather than on Plaintiff's own corporate certifications, counsel-submitted filings, and other documentation certified by the Cypriot government.

85.    An agency may not rationally treat a voluntarily corrected, self-disclosed discrepancy—one that the record demonstrates was promptly rectified with supporting third-party documentation—as *per se* evidence of bad faith warranting categorical exclusion from consideration. The failure to engage with the correction is itself an "important aspect of the problem" that Defendants entirely ignored. *State Farm*, 463 U.S. at 43.

86.    Moreover, the purported misstatement was wholly collateral to the merits of Plaintiff's petition. Whether Alexander Volfovich's last transaction with Igor Zimenkov occurred

in April or December 2021—or even if it continued through 2022 and beyond—has no bearing on Plaintiff's proposed remedial steps.

87.     Plaintiff's certification that it would not engage with SDNs, the governance restructuring effectuated through Plaintiff's board and Alexander Volfovich's removal, the compliance programs Plaintiff pledged to implement, and the divestment documentation submitted to the Cypriot Registrar all derive from Plaintiff's own acts and obligations. They do not derive from any representation by Alexander Volfovich about his prior business relationships. Defendants made no attempt to connect the date discrepancy to any element of Plaintiff's proposed remedial program, rendering their credibility inference untethered to the record.

88.     By assigning dispositive weight to a voluntarily corrected imprecision without analyzing its nature, the adequacy of the correction, the materiality of the discrepancy to Plaintiff's petition, or which specific aspects of Plaintiff's remedial proposal depended on Alexander Volfovich's representations rather than on independent documentation, Defendants failed to engage in the reasoned decision-making required by the APA. Accordingly, Defendants acted arbitrarily and capriciously in violation of 5 U.S.C. § 706(2)(A).

**COUNT IV**

DEFENDANTS ACTED ARBITRARILY AND CAPRICIOUSLY IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT BY RELYING ON ORBIS' DATABASE OVER PLAINTIFF'S SELF-EFFECTUATING DOCUMENTATION

89.     Plaintiff re-alleges and incorporates by reference the submissions contained in all preceding paragraphs as if fully set forth herein.

90.     Under the APA, agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

25

91.     An agency acts arbitrarily when it entirely fails to consider an important aspect of the problem or offers an explanation for its decision that runs counter to the evidence before it. *Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Additionally, an agency action is arbitrary and capricious where the agency fails to adequately explain why it discounted evidence a petitioner submitted. *Epsilon Electronics, Inc. v. U.S. Dep't of the Treasury*, 857 F.3d 913 (D.C. Cir. 2017). Said differently, an agency's action is arbitrary and capricious where it fails to examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

92.     Defendants' evidentiary memorandum states that, "OFAC has been unable to confirm Volfovich's representations that he has resigned from VFC." AR at 182. Specifically, Defendants stated that, "[a]ccording to Orbis, accessed September 17, 2025, Volfovich is and has been a director of VFC since 2019, and owns 40 percent of VFC. The information in Orbis does not corroborate Petitioner's assertion that on September 5, 2024, Volfovich was removed as an officer and director from VFC." *Id*.

93.     Defendants therefore credited the absence of an update in a third-party commercial database over certified, legally operative primary-source documentation establishing Alexander Volfovich's self-effectuating resignation. Indeed, the documentation Plaintiff submitted to evidence Alexander Volfovich's resignation included a certified instrument from the Cypriot Department of Registrar of Companies and Intellectual Property ("Cypriot Registrar") bearing the government agency's official, legally recognized stamp. AR at 303.

26

94.    Unlike Orbis, the Cypriot Registrar is the official government authority responsible for maintaining the official corporate record for Cypriot entities. A certified government corporate filing is, by its nature, a self-effectuating legal record. It does not require corroboration from a commercial aggregator to establish the legal fact it records.

95.    Orbis, by contrast, is a subscription-based commercial database that aggregates information from public registries. Orbis expressly acknowledges on its own website that it does not warrant that its information is accurate, reliable, or up to date, stating in all capitals that, "NEITHER ORBIS NOR ANYONE ASSOCIATED WITH ORBIS REPRESENTS OR WARRANTS THAT THE WEBSITE, ITS CONTENT OR ANY SERVICES OR ITEMS OBTAINED THROUGH THE WEBSITE WILL BE ACCURATE, RELIABLE, ERROR-FREE OR UNINTERRUPTED, [OR] THAT DEFECTS WILL BE CORRECTED." Website terms & conditions, Orbis, https://www.orbis.org/en/website-terms-conditions (last visited Apr. 22, 2026).

96.    Defendants' evidentiary memorandum does not acknowledge Orbis' limitations, identify any reason to doubt the authenticity of Plaintiff's certified submissions, or explain why a commercial database that expressly disclaims its own accuracy is a superior evidentiary basis to a certified government filing.

97.    Defendants further failed to explain that confirmation through a public-source database was a required condition precedent to removal under 31 C.F.R. § 501.807, nor did Defendants seek any clarification from Plaintiff regarding the discrepancy before issuing its denial. Indeed, the administrative record does not reflect any request for additional documentation addressing Defendants' concerns about the Orbis data, nor any explanation of what documentation Plaintiff could submit to satisfy the agency's evidentiary requirements. Instead, Defendants silently elevated a self-disclaimed commercial aggregator over certified governmental

27

documentation, without explanation, and without providing Plaintiff an opportunity to address Defendants' concerns.

98.     By crediting Orbis' self-described unreliable database entries over Plaintiff's certified governmental filings, without explaining why the legally operative primary-source documentation was insufficient or discarded, and without identifying whether any alternative showing could satisfy the agency's evidentiary standards, Defendants failed to engage in reasoned decision-making required by the APA. Accordingly, Defendants acted arbitrarily and capriciously in violation of 5 U.S.C. § 706(2)(A).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Issue an order vacating Plaintiff's February 1, 2023 designation pursuant to E.O. 14024;

B.     Declare that OFAC's September 19, 2025 denial of Plaintiff's petition for removal was arbitrary, capricious, and otherwise not in accordance with law;

C.     Issue an order vacating OFAC's September 19, 2025 denial of Plaintiff's petition;

D.     Remand Plaintiff's petition for removal to OFAC for reconsideration consistent with the Court's decision and with instructions that OFAC provide a reasoned explanation addressing the remedial measures Plaintiff submitted and the standards governing reconsideration under 31 C.F.R. § 501.807, and grant such declaratory and injunctive relief as may be necessary to effectuate that remand and ensure meaningful consideration;

E.     Order Defendants to produce unclassified summaries of classified or otherwise privileged information contained in the administrative record, which—together

with the unclassified version of the administrative record—apprises Plaintiff of the

reasons for its designation and the denial of its petition for removal;

F.      Grant an award to Plaintiff of its costs and attorneys' fees under the Equal Access

to Justice Act, 28 U.S.C. § 2412 *et* seq., and any other applicable provision of law;

and

G.      Grant such other and further relief as the Court may deem just and proper.

Dated: May 21, 2026

Respectfully submitted,

*/s/ Erich C. Ferrari*
Erich C. Ferrari, Esq.
Ferrari & Associates
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Counsel for Plaintiff*