**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **VFC SOLUTIONS LTD,** | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 25-cv-3861 (TJK) |
| **BRADLEY T. SMITH, et al.,** | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Erich C. Ferrari, Esq.
Ferrari & Associates
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Counsel for Plaintiff*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

BACKGROUND ........................................................................................................3

I. Statutory and Regulatory Background ........................................................................3

A. IEEPA and Executive Order 14024 ........................................................................3

B. OFAC's Reconsideration Procedures........................................................................4

II. Statement of Facts ........................................................................................................4

A. VFC and Its Designation........................................................................................4

B. VFC's Petition and Proposed Remedial Measures ..................................................6

C. OFAC's Questionnaire, VFC's Responses, and Volfovich's Resignation ...............7

D. The Attempted Share Transfer and the Cypriot Authorities ....................................8

E. OFAC's Denial........................................................................................................9

F. This Action ..........................................................................................................12

LEGAL STANDARD..................................................................................................13

ARGUMENT..............................................................................................................15

I. OFAC Denied VFC's Petition on a Factual Premise the Record Contradicts and Imputed to VFC a Third Party's Corrected Statement Without Reasoned Analysis (Counts II and III)..........................................................................................15

A. The denial treats VFC's petition and remedial measures as Volfovich's, contrary to the record. ..........................................................................16

B. OFAC never explained how Volfovich's credibility bears on VFC's independently verifiable undertakings. ..........................................................17

C. OFAC did not consider the voluntary correction, its materiality, or the corroborating records, and its categorical inference was unreasoned...................19

II. OFAC Disregarded Certified Government Records Establishing Volfovich's Removal as a Director and Credited a Commercial Database Without Explanation (Count IV).............................................................................20

A. The record contained direct, primary evidence of the resignation, which OFAC never addressed. ...................................................................................21

B. OFAC's reliance on Orbis was unexplained and inconsistent with its own treatment of the Cypriot Registrar. ....22

C. "Unable to confirm" is not a finding. ....23

III. OFAC's "Proxy Control" Rationale Is Speculation Untethered to the Record, and OFAC Failed to Consider VFC's Proposals and Alternatives (Count I). ....23

A. The proxy rationale rests on no record evidence and ignores that the sons already held majority ownership and sole directorship. ....24

B. The rationale is circular: the sons are blocked persons only because of VFC. ....25

C. OFAC imposed an "unrelated third party" requirement that § 501.807 does not contain. ....25

D. OFAC faulted VFC for an incomplete divestment that OFAC's own listing prevents, and it ignored VFC's conditional-removal proposal and compliance undertakings. ....26

E. OFAC's alternative statement that VFC "has acted or purported to act" for Volfovich is unexplained. ....28

IV. The Court Should Vacate the Denial and Remand with Instructions. ....29

CONCLUSION ....30

## TABLE OF AUTHORITIES

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993) ....................29

*Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1 (D.D.C. 2019)....................15, 22, 26

*Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077 (D.C. Cir. 2001)....................13

*Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281 (1974)....................15, 18

*Butte County v. Hogen*, 613 F.3d 190 (D.C. Cir. 2010)....................14, 21, 28

*Camp v. Pitts*, 411 U.S. 138 (1973)....................13

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020)....................15, 16, 27

*Diegelmann v. Bessent*, No. 24-5277 (D.C. Cir. July 14, 2026)....................15, 26

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016)....................15, 26

*Epsilon Elecs., Inc. v. U.S. Dep't of the Treasury*, 857 F.3d 913 (D.C. Cir. 2017).............. *passim*

*Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018)....................29

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)....................15, 22, 26

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985)....................29

*Genuine Parts Co. v. EPA*, 890 F.3d 304 (D.C. Cir. 2018)....................14, 19, 22

*Goetz v. Palluconi*, 775 F. Supp. 3d 189 (D.D.C. 2025)....................18, 23, 25, 27, 28

*Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003)....................13

*Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728 (D.C. Cir. 2007)....................13

*Joumaa v. Mnuchin*, No. 17-cv-2780 (TJK), ECF No. 25 (D.D.C. Apr. 10, 2019)..........14, 20, 29

*Judulang v. Holder*, 565 U.S. 42 (2011)....................14

*Kadi v. Geithner*, 42 F. Supp. 3d 1 (D.D.C. 2012)....................13

*Kisor v. Wilkie*, 588 U.S. 558 (2019)....................15, 26

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)....................15, 26

*Michigan v. EPA*, 576 U.S. 743 (2015)....................14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ........ *passim*

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ........ 15, 16

*Sulemane v. Mnuchin*, No. 16-cv-1822 (TJK), ECF No. 28 (D.D.C. Jan. 2, 2019) ........ *passim*

*Tourus Records, Inc. v. DEA*, 259 F.3d 731 (D.C. Cir. 2001) ........ 14, 20, 28

*Tripoli Rocketry Ass'n v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 437 F.3d 75 (D.C. Cir. 2006) ........ 23, 24

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ........ 22

*Zevallos v. Obama*, 793 F.3d 106 (D.C. Cir. 2015) ........ 4, 13

*Zevallos v. Obama*, 10 F. Supp. 3d 111 (D.D.C. 2014) ........ 13

**Statutes**

5 U.S.C. § 706 ........ *passim*

28 U.S.C. § 2412 ........ 30

50 U.S.C. § 1701 ........ 3

50 U.S.C. § 1702 ........ 3, 20

**Regulations**

31 C.F.R. § 501.807 ........ *passim*

31 C.F.R. Part 587 ........ 3

31 C.F.R. § 587.802 ........ 3

**Executive Materials**

Exec. Order No. 14024, 86 Fed. Reg. 20,249 (Apr. 15, 2021) ........ *passim*

Notice of OFAC Sanctions Actions, 88 Fed. Reg. 8,041 (Feb. 7, 2023) ........ 5

**Rules**

Fed. R. Civ. P. 56 ........ 13

LCvR 7(h) ........ 4

LCvR 7(n) ........ 4

## INTRODUCTION

Plaintiff VFC Solutions Ltd ("VFC" or "Plaintiff") is a small Cypriot investment company that, before its designation, invested in early-stage Israeli and American technology start-ups. AR 206–07, 239. It told OFAC, and OFAC has not disputed, that it has had no dealings with the Government of the Russian Federation and, apart from the three members of the Volfovich family who own it, no relationship with any person on the Specially Designated Nationals and Blocked Persons List ("SDN List"). AR 248. The Office of Foreign Assets Control ("OFAC") designated VFC on February 1, 2023, for a single, derivative reason: it was "owned or controlled by," or had "acted or purported to act for or on behalf of," Alexander Volfovich, who was designated the same day. AR 3, 6, 175. The only evidence disclosed in the unclassified record for that conclusion was a commercial database entry listing Volfovich as one of VFC's three directors. AR 10.

VFC did what OFAC's regulations invite a derivatively designated entity to do. It petitioned for reconsideration under 31 C.F.R. § 501.807 and proposed the "remedial steps" that the regulation names by example—"resignation of persons from positions in a blocked entity" and "corporate reorganization"—together with sixteen additional certification, disclosure, compliance, and audit undertakings. AR 210–12. Volfovich resigned as a director on September 5, 2024, a fact VFC established with a certificate issued under the seal of the Cypriot Department of Registrar of Companies and Intellectual Property. AR 259, 303. He executed instruments transferring his entire shareholding, which the Cypriot authorities have declined to register for one reason only—i.e., VFC and its shareholders remain on the SDN List. AR 617, 706–07. VFC told OFAC it would accept removal conditioned on completion of the transfer within four weeks. AR 707.

On September 19, 2025, OFAC denied the petition. AR 175–76. Its stated reasons do not withstand the review that the Administrative Procedure Act ("APA") requires. OFAC treated

VFC's petition as Volfovich's petition and then rejected VFC's remedial measures because it distrusted Volfovich—a factual premise the record contradicts. It declared itself "unable to confirm" Volfovich's resignation because a subscription database had not been updated, without mentioning the certified government record before it, and without explaining why an aggregator should be credited over the registry whose authority OFAC itself invoked when it designated VFC. It concluded that Volfovich "would likely be able to continue to exert control, via proxy," through his sons, without identifying any evidence of proxy control and without confronting the fact that the sons already held a sixty-percent majority and had been VFC's only directors for a year. AR 175, 182–84, 303. And it insisted on a sale to an "un-related third party," a requirement found nowhere in § 501.807, while faulting VFC for an incomplete divestment that OFAC's own listing prevents. AR 184, 617, 706–07.

This case therefore concerns whether OFAC engaged in the reasoned decisionmaking the APA requires when it denied VFC's petition. It does not ask the Court to decide whether OFAC had a sufficient basis to designate VFC in February 2023, which VFC's petition did not contest, AR 175; to reweigh evidence; or to substitute its judgment for OFAC's on whether VFC should be removed from the SDN List. It asks only that the Court hold OFAC to its own regulation and to the settled requirements of § 706(2)(A). An agency's explanation must be one of reasoning rather than conclusion. It must rest on premises the record supports, confront the evidence that cuts against it, and consider the proposals actually before it. For the reasons explained below, the denial fails those requirements on three independent grounds, each of which requires judgment for Plaintiff on the corresponding count of the Amended Complaint, ECF No. 10. The Court should vacate the September 19, 2025 denial and remand for reconsideration consistent with its opinion.

## BACKGROUND

### I. Statutory and Regulatory Background

#### A. IEEPA and Executive Order 14024

The International Emergency Economic Powers Act ("IEEPA") authorizes the President to declare a national emergency with respect to an "unusual and extraordinary threat" that has its source in whole or substantial part outside the United States. 50 U.S.C. § 1701(a). Upon such a declaration, he may regulate or prohibit transactions in property in which a foreign person has an interest. *Id.* § 1702(a)(1)(B). On April 15, 2021, the President invoked that authority in Executive Order 14024, which declared a national emergency with respect to specified harmful foreign activities of the Government of the Russian Federation. Exec. Order No. 14024, 86 Fed. Reg. 20,249 (Apr. 15, 2021); AR 15–18.

Section 1(a) of the Order blocks the property of persons determined by the Secretary of the Treasury, in consultation with the Secretary of State, to meet any of several criteria. Two are relevant here. Section 1(a)(vii) reaches any person determined "to be owned or controlled by, or to have acted or purported to act for or on behalf of, directly or indirectly, the Government of the Russian Federation or any person whose property and interests in property are blocked pursuant to this order." 86 Fed. Reg. at 20,250; AR 16. Section 1(a)(iii)(C) reaches any person determined "to be or have been a leader, official, senior executive officer, or member of the board of directors of . . . an entity whose property and interests in property are blocked pursuant to this order." *Id.* OFAC administers the Order through the Russian Harmful Foreign Activities Sanctions Regulations, 31 C.F.R. Part 587. *See* 31 C.F.R. § 587.802.

### B. OFAC's Reconsideration Procedures

OFAC's regulations establish a procedure by which a designated person may seek removal from the SDN List. 31 C.F.R. § 501.807. A person "may submit arguments or evidence that the person believes establishes that insufficient basis exists for the sanction or that the circumstances resulting in the sanction no longer apply." *Id.* § 501.807(a). The regulation then addresses remedial measures in terms that matter here. Specifically, it states that the person "also may propose remedial steps on the person's part, such as corporate reorganization, resignation of persons from positions in a blocked entity, or similar steps, which the person believes would negate the basis for the sanction." *Id.* OFAC reviews the submission and "may request clarifying, corroborating, or other additional information," *id.* § 501.807(b)(1), and, after conducting its review, provides "a written decision," *id.* § 501.807(b)(3). The D.C. Circuit has described the inquiry as whether "whatever rationale led Treasury to designate [the petitioner] . . . was never true or is no longer true." *Zevallos v. Obama*, 793 F.3d 106, 110 (D.C. Cir. 2015). A denial of reconsideration may be challenged under the APA. *Sulemane v. Mnuchin*, No. 16-cv-1822 (TJK), Mem. Op. at 4, ECF No. 28 (D.D.C. Jan. 2, 2019) (Kelly, J.). VFC, whose property remains blocked by reason of the denial, seeks that review here. Am. Compl. ¶¶ 13–14, 26, ECF No. 10.

## II. Statement of Facts

Pursuant to Local Civil Rule 7(h)(2), Plaintiff sets forth the following statement of facts with references to the administrative record ("AR"), which Defendants produced on March 25, 2026. The portions of the record cited in this memorandum will be included in the appendix required by Local Civil Rule 7(n).

### A. VFC and Its Designation

VFC was incorporated in Cyprus on July 19, 2019, under registration number HE 400224. AR 206, 217. It is owned by Alexander Volfovich (40%), and by his adult sons Stanislav Volfovich

(40%) and Ariel Volfovich (20%). AR 182, 206, 239–40; *see* Answer ¶ 18, ECF No. 12. Its business consisted of investing in Israeli and American start-ups; it has no subsidiaries, branches, or employees beyond its directors and corporate secretary. AR 206–07, 239–40. Since May 2022, VFC has been managed and operated by Stanislav and Ariel Volfovich, with Alexander Volfovich as a "silent investor" who did not participate in investment decisions. AR 206–07, 239.

On February 1, 2023, OFAC designated VFC under section 1(a)(vii) of E.O. 14024 for "being owned or controlled by, or having acted or purported to act for or on behalf of, directly or indirectly," Alexander Volfovich, whom OFAC designated the same day under section 1(a)(vi)(B) for materially assisting Igor Zimenkov. AR 1–3, 6 & n.2, 175, 177 & n.2; Notice of OFAC Sanctions Actions, 88 Fed. Reg. 8,041 (Feb. 7, 2023), AR 188–94; Answer ¶ 25. OFAC simultaneously designated Stanislav and Ariel Volfovich under section 1(a)(iii)(C) "for being or having been a leader, official, senior executive officer, or member of the board of directors of VFC." AR 2, 180 nn.5–6; Answer ¶ 25.

The unclassified portion of the designation evidentiary memorandum states that, "[a]ccording to an Orbis report for VFC, accessed on September 21, 2022, Volfovich is a director of VFC," and that "[n]o ownership information is available for VFC in the report." AR 10. The Orbis report itself, sourced to a private credit-reporting firm, listed all three Volfoviches as directors and stated that "[t]here is no known current shareholder for this company. Therefore, no beneficial owner can be identified." AR 73–74.

In the same memorandum, OFAC relied on the website of the Cypriot Department of Registrar of Companies and Intellectual Property (the "Registrar") for the proposition that a Cypriot company's "activities are carried out by the directors who exercise all the company's powers." AR 8, 161. The Registrar's page, which OFAC placed in the record, explains that "any

changes relating to the directors and secretary are notified to the Registrar of Companies with the submission of form HE4." AR 162. It adds that "[t]he details of the directors and secretary are published on the electronic register of the Registrar of Companies." *Id.*

The designation also blocked VFC's accounts at Hyposwiss Private Bank Genève SA on February 2, 2023. VFC has been commercially inactive since. AR 207.

### B. VFC's Petition and Proposed Remedial Measures

On February 17, 2024, VFC petitioned for reconsideration under § 501.807. AR 205–33. The petition did not contest the original basis for the designation. AR 175. Instead, tracking the regulation's text, it proposed "certain remedial measures which, if adopted, would negate the basis of its designation," and stated: "Specifically, VFC proposes the following." AR 210. Seventeen numbered measures followed. The first was that "Alexander Volfovich will divest his ownership in, and resign from, VFC," with documentation to be provided to OFAC. AR 210. The remainder were VFC's own corporate undertakings. AR 210–12. For example, VFC offered certifications, under penalty of perjury and annually for five years, that it does not and will not deal with persons on the SDN List (other than its directors Stanislav and Ariel Volfovich) or with persons owned or controlled by, or acting for, such persons. AR 210–11, 213. It offered to certify that it is not acting for or on behalf of any SDN and that it will not invest in or deal with sanctioned sectors of the Russian economy. AR 210–11. It offered annual and monthly disclosure of its income, financial institutions, and financial statements. AR 211. It offered to implement sanctions and anti-money-laundering compliance programs, with the identities of responsible compliance personnel disclosed to OFAC, and to require third-party compliance training for all employees. AR 211–12. And it offered to submit annual reports and board minutes, to undergo independent audits on OFAC's request, and to respond to any OFAC inquiry within thirty days. AR 212.

The petition added that "to the extent OFAC requires additional remedial measures, VFC is willing to expeditiously consider any additional remedial measures which OFAC proposes." AR 212. It explained that VFC "is proposing to verifiably sever its relationship with Alexander Volfovich by accepting his resignation and the divestment of his shares," so that VFC "would no longer be 'owned or controlled by' Alexander Volfovich, thereby negating the basis of its designation." AR 213. Defendants admit that VFC "proposed to sever its relationship with Alexander Volfovich" as an element of its petition. Answer ¶ 3.

### C. OFAC's Questionnaire, VFC's Responses, and Volfovich's Resignation

On March 1, 2024, OFAC sent VFC a nine-question questionnaire concerning VFC's business, ownership and management, investments, suppliers, customers, financial accounts, any work related to the Russian government, and any relationships with SDNs. AR 234–36. VFC responded on May 2, 2024. AR 238–49. It identified its shareholders, directors, and corporate secretary. AR 239–40. It confirmed that it "has had no relationship or dealings, directly or indirectly, with the Government of the Russian Federation, or entities owned or controlled by the Government of the Russian Federation." AR 248. And it confirmed that, aside from its previously disclosed relationship with the Volfovich family members, it "does not have any current or past relationship with any individual or entity identified on the [SDN List]." *Id.* VFC again asked OFAC either to accept the proposed measures or to "propose additional remedial steps that OFAC requires." AR 248.

On October 8, 2024, VFC supplemented its response. It reported that "on September 5, 2024, Alexander Volfovich was removed as an officer and director of the company," that he was "in the process of divesting his shares," and that OFAC "will be updated once the divestment is completed." AR 259. VFC attached a certificate issued by the Registrar on September 9, 2024,

certifying "in accordance with the records kept by this Department" that VFC's directors are Stanislav Volfovich and Ariel Volfovich, and that its secretary is Kyriaki Theodosiou. AR 303. Alexander Volfovich does not appear on it. *Id.* Defendants admit that VFC "submitted documentation purporting to show that, as of September 9, 2024, Alexander Volfovich was not a director of VFC Solutions Ltd." and that "Ariel and Stanislav Volfovich were the sole directors." Answer ¶¶ 3, 18. OFAC acknowledged receipt and stated that the petition was "currently under review." AR 305.

### D. The Attempted Share Transfer and the Cypriot Authorities

On June 3, 2025, VFC supplemented its petition again. AR 616–32. It reported that on August 7, 2024, Alexander Volfovich had executed two instruments transferring 200 shares to Stanislav Volfovich and his remaining 200 shares to Ariel Volfovich, "thereby fully severing his ownership interest." AR 617. The instruments, together with the required Form HE57 and a confirmation letter from VFC's secretary, had been submitted to the Registrar. AR 617, 620–25. The Registrar informed VFC that approval of the Cypriot Ministry of Finance would be required "as Petitioner and its shareholders are identified on OFAC's SDN List"; VFC sought that approval on December 2, 2024; the Ministry denied it on March 7, 2025; and VFC appealed on March 27, 2025. AR 617. VFC explained that "the Registrar and Ministry of Finance's refusal to approve the transfers are the result of Petitioner's designation," such that rescission of the designation would permit the divestment to be completed. *Id.* Defendants admit that OFAC "understands that Cypriot authorities did not approve the proposed transfer." Answer ¶ 3.

On July 18, 2025, VFC submitted a legal opinion from a Cypriot law firm. AR 705–18. The opinion confirmed that neither VFC nor its shareholders is subject to European Union or United Nations sanctions and that the Registrar is therefore not legally prohibited from processing

the transfers. AR 706, 711, 713–14. It explained that Cypriot authorities nonetheless "adopt a conservative, compliance-driven approach" toward OFAC-designated parties that "has resulted in delays or refusals to proceed with administrative actions involving OFAC-designated parties." AR 706–07, 716. Counsel opined that, if the relevant parties were removed from the SDN List, the transfer would ordinarily be processed in approximately two weeks. AR 707. VFC therefore proposed that OFAC condition a favorable adjudication "on Mr. Alexander Volfovich's divestment from Petitioner within a four-week period following Petitioner's removal from the SDN List," either as a condition noted in the determination letter or in a Terms of Removal Agreement. AR 707.

**E. OFAC's Denial**

On September 19, 2025, OFAC denied the petition in a two-page letter (AR 175–76) supported by an evidentiary memorandum, the unclassified portions of which span nine pages (AR 177–85). The letter acknowledges that VFC "did not challenge the original basis for VFC's designation" but sought reconsideration "based on proposed remedial measures, including Volfovich's resignation as an officer and director of VFC and his plans to divest from VFC and transfer his shares to his sons." AR 175. It then gives four reasons for denial.

First, OFAC stated that "[i]nformation available to OFAC, including the material submitted as part of Volfovich's petition, indicates that VFC continues to be owned or controlled by Volfovich and the proposed remedial measures would enable Volfovich to continue exercising control over VFC through his sons." AR 175. Second, OFAC stated that "Volfovich's ownership stake in VFC continues to exist as divestment from VFC has not occurred," because "Cypriot authorities did not approve the proposed share transfers." *Id.* Third, OFAC stated that "[e]ven if the proposed share transfer were ultimately approved and effectuated, the proposed remedial

measures would result in the sale of VFC to Volfovich's sons, and thus Volfovich would likely be able to continue to exert control, via proxy, over VFC." *Id.* The letter added, in a single sentence and without elaboration, that "VFC has also acted or purported to act for or on behalf of, directly or indirectly, Volfovich, and thus VFC continues to meet its original basis for designation." *Id.* Fourth, OFAC stated that it "has reason to believe that Volfovich has made misstatements regarding his relationship with Igor Zimenkov" in "his petition," and that "[a]s a result, OFAC cannot rely on the trustworthiness of information being provided by Volfovich in support of any potential VFC remedial measures." AR 176.

The evidentiary memorandum elaborates on each ground. On ownership and control, it states that "[a]ccording to Orbis, accessed September 17, 2025, VOLFOVICH is and has been a director of VFC since 2019, and owns 40 percent of VFC." AR 182. It adds that "[t]he information in Orbis does not corroborate Petitioner's assertion that on September 5, 2024, VOLFOVICH was removed as an officer and director of VFC." *Id.* (citing AR 259, 303). It states that OFAC "has not been able to confirm based on publicly available sources" the resignation. AR 183. The memorandum does not discuss the Registrar's September 9, 2024 certificate, beyond citing the exhibit page on which it appears, and the record reflects no inquiry by OFAC to the Registrar, to its electronic register, or to VFC. AR 177–85. The Orbis report OFAC relied upon carries a data update of July 11, 2025, and sources its director information to the same private credit-reporting firm as the 2022 report. AR 634–38.

On the transfer to Volfovich's sons, the memorandum states that "OFAC will not agree to remedial steps that involve the transfer of VOLFOVICH's shares in VFC to his sons, STANISLAV VOLFOVICH and ARIEL VOLFOVICH, both of whom are blocked persons under E.O. 14024 based on their involvement with VFC." AR 184. It adds that "[g]iven their familial relationship

with VOLFOVICH, OFAC would have substantial concerns that VOLFOVICH could still maintain control over VFC using his children as proxies." *Id.*; *see also* AR 182 (the transfer "to his children, both of whom are blocked persons under E.O. 14024, as opposed to an unaffiliated third-party, leads OFAC to have reason to believe that VOLFOVICH could still continue to exercise control"). The memorandum identifies no evidence that Alexander Volfovich directs his sons' management of VFC. It does not address the fact that Stanislav and Ariel Volfovich already held sixty percent of VFC and had been its only directors since September 2024. AR 177–85. Nor does it address the certifications VFC offered, the compliance and audit measures VFC proposed, VFC's offer to adopt any additional measure OFAC identified, or VFC's proposal that removal be conditioned on completion of the transfer. *Id.*

On credibility, the memorandum states that Volfovich's own reconsideration request of January 28, 2024, asserted that he "severed his relationship with IGOR ZIMENKOV in April 2021," and that Volfovich "later clarif[ied] that the last financial transaction with IGOR ZIMENKOV actually occurred on December 6, 2021." AR 182–83 (citing AR 311, 321, 415–16). The record shows that the clarification was made in Volfovich's July 29, 2024 response to OFAC's own request for "corroborative evidence" of the date of the final transaction. AR 415. Volfovich disclosed that the petition had "mistakenly" described the 2021 severance payments. AR 415–16. And he supported the correction with a letter from the registered auditor of the relevant companies, with supporting bank and invoice records, confirming that no transaction with the Zimenkovs occurred after 2021. AR 415, 518–19. From this, the memorandum concludes that OFAC "cannot trust VOLFOVICH's proposed remedial measures," AR 181, and that "[b]earing in mind that future VOLFOVICH's actions and representations would be central to any remedial steps related to VFC's petition," OFAC "could not reasonably rely on any such representations," AR 184. The

memorandum does not identify which of VFC's remedial measures depends on representations by Volfovich, and does not assess the nature or materiality of the corrected statement. AR 177–85.

Throughout, the memorandum attributes VFC's submissions to Volfovich. It states that "[undersigned counsel] submitted VOLFOVICH's response to OFAC's questionnaire," although the questionnaire was addressed to, and answered by, VFC. AR 179; *see* AR 234, 238. It states that "VOLFOVICH provided OFAC with updates concerning his progress in divesting his shares," although the updates were VFC's supplements. AR 180; *see* AR 258, 616. It states that in VFC's petition "VOLFOVICH has proposed remedial steps related to VFC," although the petition states "VFC proposes the following." AR 183; *see* AR 210. And it states that OFAC "cannot trust VOLFOVICH's proposed remedial measures." AR 181. Its conclusion summarizes that "VFC and VOLFOVICH's counsel have disclosed" the ownership facts and that Volfovich is "seeking to divest from VFC by transferring his ownership to his sons . . . as opposed to an un-related third-party." AR 184. It adds that OFAC "cannot rely on the trustworthiness of information being provided in support of VFC's remedial measures by VOLFOVICH." *Id.*

**F. This Action**

VFC filed this action on November 4, 2025, ECF No. 1, and its Amended Complaint on May 21, 2026, ECF No. 10. The Amended Complaint pleads four counts under 5 U.S.C. § 706(2)(A). Count I alleges that OFAC denied the petition on speculation and conjecture unsupported by the record. Am. Compl. ¶¶ 62–69. Count II alleges that OFAC denied the petition based on purported misstatements by a separate petitioner in a separate proceeding, thus failing to give VFC's petition individualized consideration. *Id.* ¶¶ 70–78. Count III alleges that OFAC failed to credit the voluntary correction of that statement and used the resulting credibility determination to deny VFC's petition. *Id.* ¶¶ 79–88. Count IV alleges that OFAC relied on the Orbis database

over VFC's self-effectuating documentation. *Id.* ¶¶ 89–98. Defendants answered on June 18, 2026. ECF No. 12. By Minute Order of August 13, 2026, the Court set the schedule for cross-motions for summary judgment.

**LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a case such as this one, in which review is confined to the administrative record, "the district judge sits as an appellate tribunal" and "[t]he entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation marks omitted); *Sulemane*, Mem. Op. at 8. Summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012); *accord Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015). The "focal point for judicial review should be the administrative record already in existence." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

Under the APA, the Court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The standard is deferential, and courts in this Circuit afford OFAC's determinations at the intersection of national security, foreign policy, and administrative law a particularly wide berth. *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 162 (D.C. Cir. 2003). But deference "does not permit the Court to substitute its judgment for OFAC's"; it "requires only that OFAC have 'examine[d] the relevant data and articulate[d] a satisfactory

explanation for its action including a rational connection between the facts found and the choice made.'" *Joumaa v. Mnuchin*, No. 17-cv-2780 (TJK), Mem. Op. at 13, ECF No. 25 (D.D.C. Apr. 10, 2019) (Kelly, J.) (internal quotation marks omitted) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "[C]ourts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (internal quotation marks omitted).

Agency action is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider" or "entirely failed to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43. The same is true if the agency "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* The agency's statement of reasons "must be one of 'reasoning'; it must not be just a 'conclusion.'" *Butte County v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (quoting *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001)). "[A]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action," and "an agency cannot ignore evidence contradicting its position." *Id.*; *see Genuine Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018) ("[A]n agency cannot ignore evidence that undercuts its judgment; and it may not minimize such evidence without adequate explanation.").

These principles apply with full force to OFAC. In *Epsilon Electronics, Inc. v. U.S. Department of the Treasury*, 857 F.3d 913 (D.C. Cir. 2017), the D.C. Circuit set aside an OFAC determination because "[c]ertain evidence in the record" cut against the agency's conclusion and

"OFAC failed to explain adequately why it discounted that evidence." *Id.* at 927–29. A reviewing court, it held, "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974)). Review is likewise confined to the grounds the agency invoked when it acted. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020).

Finally, where an agency changes its position or departs from the approach reflected in its own regulations and prior determinations, it must "display awareness" that it is doing so and provide a reasoned explanation. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016); *Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 10, 33–34 (D.D.C. 2019) (Kelly, J.). And the meaning of the regulation OFAC applied is a question for the Court, which "must exercise [its] independent judgment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024); *see Kisor v. Wilkie*, 588 U.S. 558, 574–75 (2019); *Diegelmann v. Bessent*, No. 24-5277, slip op. at 6 (D.C. Cir. July 14, 2026) (undefined terms in OFAC's sanctions regulations take their ordinary meaning).

## ARGUMENT

### I. OFAC Denied VFC's Petition on a Factual Premise the Record Contradicts and Imputed to VFC a Third Party's Corrected Statement Without Reasoned Analysis (Counts II and III).

The fourth of OFAC's stated grounds—that OFAC "cannot rely on the trustworthiness of information being provided by Volfovich in support of any potential VFC remedial measures," AR 176—is not a subsidiary point. The evidentiary memorandum makes it the reason OFAC would not evaluate VFC's remedial package on its merits. In short, "OFAC cannot trust VOLFOVICH's proposed remedial measures that would purportedly negate the basis of designation because VOLFOVICH has made a misrepresentation to OFAC." AR 181; *see* AR 184.

That reasoning fails at each step. It rests on a mischaracterization of the record; it never connects Volfovich's credibility to anything VFC actually proposed; and it treats a voluntarily corrected statement as a disqualifying misrepresentation without analysis.

### A. The denial treats VFC's petition and remedial measures as Volfovich's, contrary to the record.

The petition was VFC's. It was filed "on behalf of" VFC, AR 175; it was signed by VFC's counsel, AR 215; and it stated, in terms, that "VFC proposes the following." AR 210. Sixteen of its seventeen measures are corporate acts that only VFC can perform, including certifications by VFC, disclosures by VFC, compliance programs adopted by VFC, audits of VFC, and reports by VFC. AR 210–12. The questionnaire was addressed to VFC and answered by VFC. AR 234, 238. The supplements were VFC's. AR 258, 616, 705. Defendants themselves admit that it was "Plaintiff [that] proposed to sever its relationship with Alexander Volfovich." Answer ¶ 3.

The evidentiary memorandum nevertheless recasts the proceeding as Volfovich's at every turn. It says that "[undersigned counsel] submitted VOLFOVICH's response to OFAC's questionnaire," AR 179, and that "VOLFOVICH provided OFAC with updates," AR 180. It says that "VOLFOVICH has proposed remedial steps related to VFC," AR 183, and that "OFAC cannot trust VOLFOVICH's proposed remedial measures," AR 181. And it refers to "information being provided in support of VFC's remedial measures by VOLFOVICH." AR 184.

Those attributions are not loose phrasing. They are the premise of the fourth ground—i.e., that because the measures are (in OFAC's telling) Volfovich's, and because Volfovich cannot be trusted, the measures cannot be accepted. AR 181, 184. An agency decision that "runs counter to the evidence before the agency" on the very fact from which its conclusion proceeds is arbitrary and capricious. *State Farm*, 463 U.S. at 43. Nor may Defendants supply a different premise now. *Chenery*, 332 U.S. at 196; *Regents*, 591 U.S. at 20.

The error is not academic, and it is not cured by OFAC's awareness that Volfovich's petition was a separate matter. Section 501.807 confers the right to seek reconsideration on the sanctioned "person," and it invites remedial steps "on the person's part." 31 C.F.R. § 501.807(a). VFC is a distinct legal person, and its designation rests on a distinct criterion. AR 6, 175. OFAC was obliged to decide whether VFC's proposed steps would negate the basis for VFC's sanction. By substituting a judgment about a different petitioner in a different proceeding for that inquiry, OFAC "relied on factors which Congress has not intended it to consider" and "entirely failed to consider an important aspect of the problem"—VFC's own petition. *State Farm*, 463 U.S. at 43.

**B. OFAC never explained how Volfovich's credibility bears on VFC's independently verifiable undertakings.**

Even on OFAC's own terms, the credibility ground required a connection between Volfovich's trustworthiness and the remedial measures being rejected. The memorandum asserts one in a single clause when it states that "future VOLFOVICH's actions and representations would be central to any remedial steps related to VFC's petition." AR 184. It does not say which steps, or why. That omission is fatal, because the record shows the opposite. Volfovich's resignation is established not by his word but by a certificate issued under the seal of the Cypriot Registrar "in accordance with the records kept by this Department." AR 303. His divestment is established by executed instruments of transfer and a Form HE57 lodged with the Registrar, whose registration turns on the decision of the Cypriot Ministry of Finance, not on anything Volfovich may say. AR 617, 620. And every remaining measure is a certification, disclosure, program, audit, or report by VFC, verifiable by OFAC through the very mechanisms VFC proposed—named compliance officers, bank statements, auditor reports, board minutes, and a thirty-day response obligation. AR 210–12, 214. Nothing in the package asks OFAC to take Volfovich at his word, and VFC said

so expressly when it proposed that removal be conditioned on completion of the transfer, an event the Registrar, not Volfovich, would confirm. AR 707.

An agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (internal quotation marks omitted). The fact found was that Volfovich misdescribed the end date of his dealings with Zimenkov; the choice made was to reject VFC's corporate certifications and Cypriot government records. The memorandum supplies no path from the one to the other, and "the agency's path" cannot "reasonably be discerned" where the agency has not walked it. *Bowman*, 419 U.S. at 286; *Epsilon*, 857 F.3d at 928 ("Nowhere in the administrative record does OFAC state any reason for choosing one inference over the other."). This Court has distinguished *Epsilon* where the unexplained point was "largely immaterial to [the agency's] ultimate decision." *Sulemane*, Mem. Op. at 13. Here the unexplained point is the decision.

Nor is this a case in which OFAC declined to credit a petitioner's own pledges because the petitioner's own conduct toward OFAC made them untrustworthy. In *Goetz v. Palluconi*, the court sustained OFAC's refusal to accept a designee's proposed reporting and audit undertakings. 775 F. Supp. 3d 189, 206, 214 (D.D.C. 2025). The designee's "pattern of obfuscation" in his own submissions gave OFAC reason to doubt that "his reports or books would be truthful," and OFAC "could neither trust nor easily verify" his pledges. *Id.* at 206, 214. OFAC has never questioned the candor of VFC or of the directors who would make VFC's certifications. Its distrust runs to a different person, in a different proceeding, whose word none of VFC's measures requires. And the measures here are not pledges OFAC must take on faith. Indeed, the resignation and the divestment are matters of public record in Cyprus, and the certifications, disclosures, and audits are verifiable through the means that VFC itself proposed. AR 210–12, 303, 617, 620.

### C. OFAC did not consider the voluntary correction, its materiality, or the corroborating records, and its categorical inference was unreasoned.

The "misrepresentation" OFAC identifies in the unclassified record is that Volfovich's January 2024 petition stated that his last Zimenkov-related transaction occurred in April 2021, whereas the final severance payment was made in December 2021. AR 182–83. The record establishes how that discrepancy came to light. Specifically, OFAC asked Volfovich for "corroborative evidence" of the April 2021 date. AR 415. Volfovich responded that the petition had "mistakenly" described the payments and gave the corrected figures and dates. AR 415–16. He also produced a letter from the companies' registered auditor, with the underlying SWIFT and invoice records, confirming that no transaction with the Zimenkovs occurred after 2021. AR 415, 518–19. The memorandum cites this correction, AR 182–83, and then treats it as proof of the misrepresentation, rather than as a correction of it.

An agency "cannot ignore evidence that undercuts its judgment; and it may not minimize such evidence without adequate explanation." *Genuine Parts*, 890 F.3d at 312. A petitioner's prompt, documented correction of its own submission, made in response to the agency's request, is evidence that bears directly on whether the original statement reflected an intent to mislead, a faulty recollection, or imprecision. OFAC did not consider that question. It did not consider whether an eight-month discrepancy in the end date of a relationship that Volfovich himself disclosed and documented is material to anything at issue in VFC's petition. And it did not consider whether the discrepancy—which concerns Volfovich's historical dealings with a third party—has any bearing on VFC, a company that OFAC does not contend has ever dealt with Zimenkov. AR 248. The memorandum instead moves in one step from "misrepresentation" to a categorical rule—i.e., that OFAC "could not reasonably rely on any such representations." AR 184. A

categorical inference drawn without engaging the countervailing evidence is precisely what *Epsilon* condemned. 857 F.3d at 927–29.

Plaintiff does not ask the Court to reweigh Volfovich's credibility, and it recognizes that credibility determinations ordinarily receive deference. *Joumaa*, Mem. Op. at 17 n.10. The defect here is different in kind. It is that OFAC never explained why a corrected imprecision by a separate person about a separate matter justified declining to evaluate VFC's own remedial measures at all. The denial letter also asserts that Volfovich "did not in fact cease material commercial and business activities related to Igor Zimenkov in 2018" and "carried out activities related to Igor Zimenkov through at least 2022." AR 176. Those assertions appear nowhere in the unclassified memorandum, which identifies the April-to-December 2021 discrepancy as the misrepresentation, AR 182–83, and attributes the balance to "intelligence reporting," AR 184. To the extent OFAC relies on classified material, the Court may review it *in camera*. *See* 50 U.S.C. § 1702(c). But classified support for a finding about Volfovich does not supply the missing explanation of why that finding disposes of VFC's petition. That explanation had to appear in the record, nut it does not. *Tourus Records*, 259 F.3d at 737. Accordingly, judgment should be entered for Plaintiff on Counts II and III.

## II. OFAC Disregarded Certified Government Records Establishing Volfovich's Removal as a Director and Credited a Commercial Database Without Explanation (Count IV).

OFAC's first ground is that VFC "continues to be owned or controlled by Volfovich." AR 175. That ground rests in part on OFAC's statement that it "has not been able to confirm based on publicly available sources the representation that, on September 5, 2024, VOLFOVICH was removed as an officer and director of VFC," because "[t]he information in Orbis does not corroborate Petitioner's assertion." AR 182–83. That statement misdescribes the record,

disregards the evidence that answers the question, and inverts OFAC's own treatment of the sources involved.

### A. The record contained direct, primary evidence of the resignation, which OFAC never addressed.

Volfovich's removal was not a "representation" or an "assertion." It was documented by a certificate of the Cypriot Registrar dated September 9, 2024, certifying from the Registrar's own records that VFC's directors are Stanislav and Ariel Volfovich. AR 303. Defendants admit that VFC submitted that documentation. Answer ¶¶ 3, 18. OFAC had it. Indeed, the memorandum cites the page on which it appears. AR 182–83 (citing Exhibit 7, p. 46, which is AR 303). Yet the memorandum never mentions what the document is, never states that OFAC doubts its authenticity, and never explains why a certificate issued by the government body that maintains the register of directors does not "confirm" the fact it certifies. AR 177–85.

That is a "refusal to consider evidence bearing on the issue before it," which "constitutes arbitrary agency action within the meaning of § 706." *Butte County*, 613 F.3d at 194. The evidence was not peripheral; it went to the precise fact on which OFAC rested its ownership and control conclusion. *See Sulemane*, Mem. Op. at 13 (explaining that *Epsilon* requires an explanation where the discounted evidence is "directly relevant" to "an issue on which the legality of [the petitioner's] conduct turned"). And OFAC's silence cannot be excused as an implicit credibility judgment about Volfovich, because the certificate is a government record, not his statement. An agency that treats a certified public record as though it were an interested party's say-so, without saying why, has not engaged in reasoned decisionmaking.

### B. OFAC's reliance on Orbis was unexplained and inconsistent with its own treatment of the Cypriot Registrar.

The only source OFAC identifies for its contrary view is Orbis, a subscription database. AR 182–83. The memorandum offers no reason to prefer it, but the record supplies several reasons not to. Notably, OFAC's own 2022 Orbis report, on which it relied to designate VFC, contained no shareholder information at all: "[t]here is no known current shareholder for this company. Therefore, no beneficial owner can be identified." AR 73–74; *see* AR 10. The 2025 report sources its director data to a private credit-reporting firm rather than to the Registrar, AR 637–38, and carries a data update of July 11, 2025, AR 634–38. Orbis, in short, is a secondary aggregation of the register, and an evidently incomplete one. The Registrar is the register.

OFAC knew this. When it designated VFC, OFAC relied on the Registrar's website as authority for what Cypriot directors do. AR 8. It also placed in the record the Registrar's explanation that changes in directors are notified to the Registrar on form HE4 and that "[t]he details of the directors and secretary are published on the electronic register of the Registrar of Companies." AR 161–62. Having invoked the Registrar as the authoritative source on directorships in 2023, OFAC in 2025 treated the Registrar's own certificate as unconfirmed and a commercial database as dispositive—without acknowledging the shift or explaining it. An agency that changes course must at least "display awareness that it is changing position" and give a reasoned explanation. *Fox*, 556 U.S. at 515; *Am. Bar Ass'n*, 370 F. Supp. 3d at 33–34. It did neither. And the "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). The absence of an update in Orbis therefore cannot constitute substantial evidence that Volfovich remains a director when the register itself says he does not. *See Genuine Parts*, 890 F.3d at 312.

### C. "Unable to confirm" is not a finding.

Section 501.807(b)(1) authorizes OFAC to "request clarifying, corroborating, or other additional information." The provision is permissive, and Plaintiff does not contend that OFAC was obliged to invoke it, as a petitioner bears the burden of making its showing. *See Goetz*, 775 F. Supp. 3d at 214. VFC made its showing with the Registrar's certificate. What OFAC could not do was treat that showing as though it were absent. The memorandum does not say that the certificate was insufficient, inauthentic, or outweighed. Rather, it says only that Orbis had not been updated and that OFAC "has not been able to confirm" the resignation from "publicly available sources." AR 182–83. The record reflects no inquiry to the Registrar or its electronic register, the source OFAC itself identified in 2023 as the place where changes in directors are published. AR 162. Nor does it reflect any explanation of why confirmation in a third-party database is a condition of relief under § 501.807, which contains no such requirement.

An agency may not impose an unwritten evidentiary hurdle and then deny relief for failure to clear it without explaining what the hurdle is or why it exists. *Cf. Tripoli Rocketry Ass'n v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006) ("We therefore owe no deference to [the agency's] purported expertise because we cannot discern it."). "Unable to confirm" describes the limit of OFAC's inquiry, not a fact about VFC. Judgment should be entered for Plaintiff on Count IV.

## III. OFAC's "Proxy Control" Rationale Is Speculation Untethered to the Record, and OFAC Failed to Consider VFC's Proposals and Alternatives (Count I).

OFAC's remaining grounds—that divestment is incomplete, and that even a completed transfer to the sons would leave Volfovich "likely . . . able to continue to exert control, via proxy," AR 175—do not withstand review either. The first faults VFC for an obstacle of OFAC's own

making, and the second is conjecture that the record contradicts, resting on a requirement the regulation does not contain. Neither ground engages with what VFC actually proposed.

### A. The proxy rationale rests on no record evidence and ignores that the sons already held majority ownership and sole directorship.

The memorandum's entire basis for the proxy theory is that Stanislav and Ariel Volfovich are Alexander Volfovich's sons: "[g]iven their familial relationship with VOLFOVICH, OFAC would have substantial concerns that VOLFOVICH could still maintain control over VFC using his children as proxies." AR 184. No fact in the unclassified record is cited for the proposition that Alexander Volfovich has directed, or would direct, his sons' management of VFC. The record points the other way. VFC's petition and questionnaire response, uncontradicted in the memorandum, state that since May 2022 VFC has been managed and operated by Stanislav and Ariel Volfovich, with Alexander Volfovich as a "silent investor" who did not participate in investment decisions. AR 206–07, 239. OFAC's own 2022 Orbis report showed the sons as directors alongside their father. AR 73. The Registrar certified in September 2024 that they were VFC's only directors. AR 303. And the sons already own sixty percent of VFC. AR 206, 239–40.

Those facts undercut OFAC's reasoning. If Alexander Volfovich could control VFC through his sons, he could do so today, when they are the majority owners and sole directors; the transfer of his remaining minority stake to them would change nothing about that capacity. OFAC does not explain how the identity of the transferee of a forty-percent interest alters the "proxy" calculus when the transferees already hold the controlling interest and all of the directorships. An explanation "so implausible that it could not be ascribed to a difference in view or the product of agency expertise" is arbitrary and capricious. *State Farm*, 463 U.S. at 43. And an agency's predictive judgment must rest on something more than the observation that a father and his sons are related. *See Tripoli Rocketry*, 437 F.3d at 77. Courts sustain OFAC's judgment that a

designee's formal separation from an entity has not ended his influence when the record contains evidence of continuing involvement. *See, e.g.*, *Goetz*, 775 F. Supp. 3d at 206, 208–09 (record showed the petitioner's continuing ties to the entities at issue); *Sulemane*, Mem. Op. at 13–14 (record showed ongoing trafficking). The memorandum here identifies no such evidence. Speculation about what Volfovich "would likely be able" to do after a completed transfer, AR 175, is not a finding that "the circumstances resulting in the sanction" continue to apply. 31 C.F.R. § 501.807(a).

### B. The rationale is circular: the sons are blocked persons only because of VFC.

OFAC's second stated reason for refusing a transfer to the sons is that they are "blocked persons under E.O. 14024." AR 182, 184. But the memorandum itself explains why insofar as they were designated under section 1(a)(iii)(C) "for being or having been a leader, official, senior executive officer, or member of the board of directors of VFC." AR 180 nn.5–6; *see* AR 2, 184 ("based on their involvement with VFC"). Their status is wholly derivative of VFC's. OFAC identifies no independent basis for it. To refuse to consider VFC's severance from Alexander Volfovich because the resulting owners are blocked, when they are blocked only because VFC is, is to reason in a circle. Indeed, VFC cannot be delisted because its owners are designated, and its owners are designated because VFC is listed. An explanation that rests on its own conclusion is not a "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (internal quotation marks omitted).

### C. OFAC imposed an "unrelated third party" requirement that § 501.807 does not contain.

The memorandum states categorically that "OFAC will not agree to remedial steps that involve the transfer of VOLFOVICH's shares in VFC to his sons," and faults Volfovich for seeking to divest to them "as opposed to an un-related third-party." AR 184; *see* AR 182. That is

a rule, and it is one the regulation does not state. Section 501.807(a) identifies "corporate reorganization" and "resignation of persons from positions in a blocked entity" as paradigmatic remedial steps. It says nothing about the identity of a transferee, nothing about arm's-length sales, and nothing excluding family members.

Where a regulation's terms are clear, the Court applies them as written; the agency receives no deference for a gloss the text does not bear. *Kisor*, 588 U.S. at 574–75; *Loper Bright*, 603 U.S. at 412; *Diegelmann*, slip op. at 6. Volfovich's resignation is the very step the regulation names. His divestment is a corporate reorganization. OFAC may, of course, conclude on a proper record that a particular transfer would not negate the basis for a particular designation. What it may not do is announce an unwritten categorical requirement in an adjudication and offer no reasoned basis for it. *See Fox*, 556 U.S. at 515; *Encino Motorcars*, 579 U.S. at 221–22; *Am. Bar Ass'n*, 370 F. Supp. 3d at 33–34. The memorandum does not acknowledge that its "un-related third-party" requirement departs from the regulation's text, and it does not explain why a transfer to the existing majority owners—who have run the company for years—is less effective at severing Volfovich's control than a sale to a stranger would be.

### D. OFAC faulted VFC for an incomplete divestment that OFAC's own listing prevents, and it ignored VFC's conditional-removal proposal and compliance undertakings.

OFAC's remaining ground is that "divestment from VFC has not occurred" because "Cypriot authorities did not approve the proposed share transfers." AR 175. The record before OFAC established why. The Registrar told VFC that Ministry of Finance approval was required "as Petitioner and its shareholders are identified on OFAC's SDN List"; the Ministry declined; and Cypriot counsel explained that although no EU or UN sanction prohibits the transfer, Cypriot authorities decline to process administrative actions involving OFAC-designated parties. AR 617,

706–07. OFAC recited these facts, AR 180, 183, and then treated the incompleteness of the divestment as disqualifying without addressing them.

An agency "entirely fail[s] to consider an important aspect of the problem" when it faults a petitioner for a condition that the agency's own action prevents the petitioner from satisfying, and says nothing about it. *State Farm*, 463 U.S. at 43. Section 501.807 speaks of steps a person "may propose," 31 C.F.R. § 501.807(a). Nothing in it requires that a proposed step be completed before OFAC will consider it. *Cf. Sulemane*, Mem. Op. at 14 (noting the petitioner's argument that the regulations do not require prior implementation and resolving the point on the ground that OFAC's reasoning there "did not turn on this point"). Here it does.

VFC, moreover, proposed a solution. Specifically, VFC requested that OFAC condition removal on completion of the transfer within four weeks, either in the determination letter or in a Terms of Removal Agreement, so that VFC would be delisted only if, and when, the Registrar recorded Volfovich's divestment. AR 707. That proposal appears nowhere in the denial letter or the memorandum. AR 175–85. Reasoned decisionmaking requires an agency to consider the "alternative[s]" that are "within the ambit of" the matter before it. *Regents*, 591 U.S. at 30 (quoting *State Farm*, 463 U.S. at 51). The conditional-removal proposal was not merely within the ambit of VFC's petition—it was VFC's answer to the precise concern OFAC identified. *Cf. Goetz*, 775 F. Supp. 3d at 213 (observing that a petitioner "would have a strong case that it would be arbitrary to deny" a petition supported by "remedial measures that adequately addressed the agency's concerns").

The same is true of the sixteen certification, disclosure, compliance, and audit measures, and of VFC's two invitations to OFAC to identify any additional measure it required. AR 210–12, 248. The memorandum's treatment of them is a single introductory phrase: the measures "are

inadequate including but not limited to the following reasons," AR 183, followed by four reasons, each of which concerns Volfovich's divestment, his directorship, or his credibility, AR 183–84. Whether VFC's certifications, disclosures, audits, and compliance programs address OFAC's stated concern about proxy control is a question OFAC never asked. The Amended Complaint pleaded exactly this omission, Am. Compl. ¶¶ 47–48, 58, 66, and Defendants' Answer identifies no passage of the record that supplies it, Answer ¶¶ 47–48, 58, 66.

### E. OFAC's alternative statement that VFC "has acted or purported to act" for Volfovich is unexplained.

The denial letter adds, in one sentence, that "VFC has also acted or purported to act for or on behalf of, directly or indirectly, Volfovich, and thus VFC continues to meet its original basis for designation." AR 175. The unclassified memorandum does not develop this statement. It identifies no act by VFC on Volfovich's behalf, and its own account of the "basis for denial" frames the continuing basis as ownership and control. AR 181–82, 184. A bare conclusion is not a statement of reasons. *Tourus Records*, 259 F.3d at 737; *Butte County*, 613 F.3d at 194. If the sentence means that a historical "acted on behalf of" determination is itself a permanent basis for designation, then no remedial step could ever negate it. That reading would render § 501.807's remedial-steps provision a nullity for every entity designated under section 1(a)(vii), a result the regulation's text forecloses. As Judge Boasberg explained in *Goetz*, "a designee's delisting does not turn on just" whether the original basis was sufficient: a designee "can seek delisting by persuasively establishing that, although the underlying basis for his designation was rock solid, the 'circumstances resulting in [his] sanction no longer apply' or the 'remedial steps' he has taken or will take 'negate the basis for the sanction.'" *Goetz*, 775 F. Supp. 3d at 213 (quoting 31 C.F.R. § 501.807(a)). The Court need not resolve what OFAC meant; it is enough that OFAC did not say. Judgment should be entered for Plaintiff on Count I.

## IV. The Court Should Vacate the Denial and Remand with Instructions.

When agency action is arbitrary and capricious, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Vacatur is the ordinary remedy under § 706(2)(A), and nothing counsels against it here. The deficiencies are serious, and vacating a denial that leaves VFC on the SDN List pending a lawful reconsideration disrupts nothing. *See Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). Plaintiff therefore requests that the Court declare that OFAC's September 19, 2025 denial of VFC's petition was arbitrary, capricious, and otherwise not in accordance with law, and vacate the denial. Plaintiff further requests that the Court remand to OFAC with instructions to reconsider VFC's February 17, 2024 petition, as supplemented, in accordance with the Court's opinion, and to issue a new written decision within sixty days. That decision should evaluate VFC's petition and remedial measures as VFC's own, and address the Registrar's certification of Volfovich's removal and each of VFC's proposed remedial measures, including its proposal that removal be conditioned on completion of the share transfer. It should also identify the record basis for any determination that Alexander Volfovich continues to own or control VFC. Plaintiff further requests that the Court retain jurisdiction to enforce its remand order.

To the extent the Court relies on classified material submitted *ex parte* and *in camera*, Plaintiff respectfully requests that Defendants be directed to provide an unclassified summary of that material to the extent consistent with national security. OFAC has provided such summaries in other sanctions proceedings before this Court. *See Joumaa*, Mem. Op. at 14, 17 (describing the "non-privileged and unclassified summary" OFAC provided). And the D.C. Circuit has recognized that one may be required in appropriate circumstances. *Fares v. Smith*, 901 F.3d 315, 324 (D.C.

Cir. 2018). Plaintiff reserves its request for fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for summary judgment on Counts I through IV of the Amended Complaint. The Court should declare that Defendants' September 19, 2025 denial of Plaintiff's petition for reconsideration was arbitrary, capricious, and otherwise not in accordance with law, vacate the denial, and remand to OFAC for reconsideration consistent with the Court's opinion within sixty days. A proposed order is submitted herewith.

Dated: October 27, 2026

Respectfully submitted,

*/s/ Erich C. Ferrari*
Erich C. Ferrari, Esq.
Ferrari & Associates
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Counsel for Plaintiff*